# WALKER BROS. v. SKLIRIS.

No. 1938.   Decided Aug. 20, 1908.   On rehearing Nov. 24, 1908
(98 Pac. 114).

1. APPEAL AND ERROR—DISMISSAL—WANT OF PARTIES. An appeal will be dismissed where all those who are adversely interested in the judgment have not been made parties to the appeal.[1]

2. APPEAL AND ERROR—RECORD—CONCLUSIVENESS—NOTICE OF APPEAL. The Supreme Court is bound by the record as the same is certified, and, where it discloses that due service of notice of appeal was accepted by the attorneys of record of the adverse parties, it cannot be contradicted, and it is immaterial that the attorneys accepting service filed no answer and made no defense to the action in the lower court.

3. STIPULATIONS—PERSONS BOUND—STIPULATIONS AS TO SETTLEMENT—ATTORNEYS. On appeal by one defendant, a stipulation attached to the bill of exceptions, signed by appellant's counsel and also by the attorney who appeared for plaintiff and for appellant's codefendants, was binding as to such codefendants, although it did not in terms stipulate for them.

4. EXCEPTIONS, BILL OF—SERVICE. Service of a bill of exceptions should be made up on the attorneys of record of the appellee, rather than upon appellee.

[1] Griffin v. Southern Pac. Co., 31 Utah 296, 87 Pac. 1091.

34 Utah—23

5. APPEAL AND ERROR—RECORD—BILL OF EXCEPTIONS—STIPULA-TIONS—CONCLUSIVENESS. Where a stipulation attached to a bill of exceptions purports to be signed by the appellee's attorney, and there is nothing in the record which shows his repudiation of either the stipulation or signature, and nothing to show that he did not sign it, unless the court should take judicial notice that the signature is not in his handwriting, it is binding on him.

6. APPEAL AND ERROR—REVIEW—QUESTIONS OF FACT—FINDINGS. Where only questions of fact are involved, and there is competent evidence in the record in support of the court's findings, the Supreme Court will not interfere.

7. PARTNERSHIP—EXISTENCE—LIABILITY TO THIRD PERSONS. Where persons held themselves out as partners, they are liable to third persons as such, regardless of any partnership agreement.

8. EVIDENCE—PRELIMINARY PROOF—DETERMINATION. Whether the preliminary proof is sufficient or not to entitle account books to be offered in evidence is in the first instance to be passed on by the trial court.

9. EVIDENCE—JUDICIAL NOTICE—METHODS OF BOOKKEEPING. The court cannot take judicial knowledge of the different methods or systems of bookkeeping.

10. EVIDENCE—BOOKS OF ACCOUNT—EFFECT. Where the entries in books of account are not stated in a form which is self-explanatory, it is essential that they be explained by proper evidence.

11. BANKS AND BANKING—OVERDRAFTS—EVIDENCE. In an action for an overdraft, books of account, containing certain symbols, *held* insufficient to establish the claims sued for, in the absence of explanatory evidence.

12. BANKS AND BANKING—OVERDRAFT—ACTION—SUFFICIENCY OF EV-IDENCE. In an action by a bank to recover an amount alleged to be due on overdrafts, evidence *held* insufficient to support the judgment for plaintiff.

13. EVIDENCE—RELEVANCY—MATTERS EXPLANATORY OF EVIDENCE. Where a particular kind or class of evidence is available which in its nature is best calculated to establish the question in issue, it must be produced if required by the adverse party, and if it is not self-explanatory it should be explained to the court or jury so that it may be given such weight as it may be entitled to.

ON REHEARING.

14. APPEAL AND ERROR—TIME FOR APPEAL—MOTION FOR NEW TRIAL. Under Comp. Law 1907, section 3301, providing that an appeal may be taken within six months from the entry of judgment, an appeal may be taken within six months after the disposition of a motion for a new trial, filed and served within proper time.

15. APPEAL AND ERROR—"RECORD"—WHAT CONSTITUTES. The record on appeal consists of the judgment roll and the bill of exceptions as settled, signed and certified to by the judge, and a document presumably sent up from the county clerk's office, together with the record purporting to be a notice of intention to move for a new trial, but not referred to in the bill of exceptions, can not be considered.

16. APPEAL AND ERROR—RECORD—CONCLUSIVENESS. When the trial judge has certified in a bill of exceptions the proceeding showing a proper service and filing of a motion for a new trial, the Supreme Court will not leave the record and inspect stray documents found among the papers which are not a part of the record on appeal.

APPEAL from District Court, Third District; M. L. Ritchie, Judge.

Action by Walker Bros., bankers, against L. G. Skliris and others. From a judgment for plaintiff, defendant Skliris, appeals.

REVERSED AND REMANDED.

*Frank J. Gustin* for appellant.

*Jas. Ingebretsen* and *R. G. Schulder* for respondent.

FRICK, J.

This action was commenced by the respondent, a banking corporation, to recover the sum of $250 from defendants Will Caravelis, Nicholas P. Stathakos, and L. G. Skliris, as partners doing business under the name and style of Caravelis & Co. The amount claimed was alleged to be due upon advancements made by respondent in the form of an overdraft made by the defendants aforesaid, and which, it is alleged,

they agreed to pay to respondent. The defendants Caravelis and Stathakos presented no answer or defense to the action, but the defendant Skliris filed an answer, in which he denied generally all the allegations of the complaint except the corporate existence of respondent. Upon the issues joined a trial was had to the court without a jury, which resulted in findings and judgment for the amount claimed in favor of respondent and against all defendants above named. The defendant Skliris, who hereafter will be designated appellant, alone appeals.

Counsel for respondent have filed two motions, (1) to dismiss the appeal, and (2) to strike the bill of exceptions. The motion to dismiss the appeal is based upon the ground that no notice of appeal was served upon the defendants Caravelis and Stathakos. If this contention is correct, the appeal must be dismissed under the rule announced by this court in the case of *Griffin v. S. P. Co.*, 31 Utah 296, 87 Pac. 1091, for the reason that all who are adversely interested in the judgment have not been made parties to the proceedings in this court.

By reference to the original notice of appeal served in this case as the same appears in the certified transcript, it is found that service of the notice was accepted on behalf of respondent by James Ingebretsen and Russell Schulder as its attorneys, and that Russell G. Schulder accepted service for the defendants Will Caravelis and Nicholas Stathakos. It is claimed by Mr. Schulder that the acceptance of service by him for the two defendants was made under a special agreement with counsel for Skliris, which was to the effect that the service was accepted by Schulder as an accommodation to counsel for Skliris merely and without waiving any rights which the other two defendants might have with respect to the motion to dismiss the appeal upon the ground that they were not served with the notice of appeal. In this connection it is also strenuously insisted by both counsel for respondent that Mr. Schulder did not represent the other two defendants, but that he represented the respondent jointly with Mr. Ingebretsen, and that therefore no notice of appeal.

was ever served upon the other two defendants or their attorney. We are, however, bound by the record as the same is certified to by the officer, who was alone authorized to prepare it, and who certified to its correctness. This record discloses that due service of the notice of appeal in this case was accepted by Mr. Schulder as the attorney for the two defendants. From the bill of exceptions, which was certified to as correct by the trial judge, it further appears that Russell Schulder appeared in the district court for the defendant Caravelis and Stathakos. In the same bill of exceptions it also appears that Mr. Schulder was permitted to appear as co-counsel with Mr. Ingebretsen for respondent. On the oral argument it was conceded by Mr. Schulder that he accepted service of the notice of appeal upon the appeal of the case from the city court, where it was originally tried to the district court. It is further conceded that he never withdrew as the attorney for the two defendants; but it is claimed that this was not necessary, since neither of them filed any answer in or made any defense to the action in the district court. While it is true that parties must be served with notice of appeal either in person or by service upon their duly authorized attorney, it is equally true that where the record discloses, as it does in this case, that parties were represented by an attorney upon whom service was duly made, or who accepted service, the service must be held sufficient. To hold otherwise would lead to endless confusion. To permit a contradiction of the record or an amendment of it in this way would result in destroying that which a record is intended to stand for in this court, namely, absolute verity until actually changed or amended by the same power that originally made it, the trial court. In view of the facts and circumstances in this case as they are made to appear from the record before us, we are firmly of the opinion that the service of the notice of appeal was sufficient, and that the motion to dismiss the appeal must therefore be denied.

The motion to strike the bill of exceptions must fail for practically the same reasons for which the motion to dismiss the appeal failed. The contention that the bill of exceptions

was not served upon the other two defendants, nor upon their attorney, cannot prevail. There is a stipulation attached to the bill of exceptions, signed by James Ingebretsen and R. G. Schulder as attorneys for the respondent, and by Frank J. Gustin as attorney for the defendant Skliris, to the effect that the proposed bill of exceptions may be settled, allowed, signed, and filed as the bill of exceptions in this case. It is true that Mr. Schulder did not in terms stipulate for the other two defendants, but he was their attorney of record at the time, and no doubt counsel for the other defendant assumed, and, in view of the circumstances, had the right to rely upon, the fact that the bill of exceptions was satisfactory to Mr. Schulder as the attorney for the other two defendants. If Mr. Schulder was the attorney of record for the other two defendants, and the record affirmatively shows that he was, then, under the statute, service should be made upon him, rather than upon his clients, since they would hardly be prepared to act without his aid in the matter in any event. It is claimed, however, that Mr. Schulder did not personally sign the stipulation to the bill of exceptions, but that the same was signed by Mr. Ingebretsen, who at no time represented any of the defendants. We cannot assume, in the face of the record, that some one signed Mr. Schulder's name to the record without his approval, even if we assume that he did not personally sign it. If he approved of it, it has the same effect as though he signed it, and there is nothing in the record which shows his repudiation of either the stipulation or signature; nor is there anything which shows that he did not sign it, unless we take judicial notice that the signature is not in his handwriting. In case we should go to this extent, there is nothing in the record which shows his disapproval of it, and hence we are compelled to hold that the stipulation is what it recites and purports to be, namely, a "stipulation by the attorneys for the respective parties to this action." This includes all the parties and all the attorneys. For these reasons the motion to strike the bill of exceptions must also be denied.

This brings us to the merits of the case. While there are numerous errors assigned, there are but two argued in the brief: (1) That the evidence does not support the findings that the three defendants constituted a partnership; and (2) that the finding of the amount of the overdraft is not sustained by the evidence. It thus appears that only questions of fact are involved, and, if there is any competent evidence in the record in support of those findings, we have no power to interfere with the judgment. Upon the first question, namely, that of partnership, if the finding were to the effect that the three defendants were partners generally there might be some merit to appellant's contention. The finding, however, limits the partnership to the transaction which the defendants had with respondent. Without going into detail, we think that the court was justified in finding that the transactions which the defendants had with Mr. Howard, the assistant cashier of respondent, constituted them partners as to this transaction. Moreover, we think that Mr. Howard, in view of the statements made by the defendants at the time the original account was opened by them with the bank, and their conduct and statements thereafter, was justified in assuming that the three defendants were partners. They certainly held themselves out as such to him. In view of this it is immaterial what the writing of the partnership agreement, which was introduced in evidence at the trial, contained, or who in fact were parties to it. Mr. Howard knew nothing concerning such an agreement at the time of the transactions, and, of course, the respondent did not. The rights of the parties therefore must be determined from what the defendants said and did, and, if we view the case from this standpoint, the court was justified in making the findings he did make upon this question. This assignment must therefore be overruled.

The assignment that the evidence does not support the finding of the court with respect to the amount of the overdraft is more serious, and, as it seems to us, should be sustained. The evidence, briefly stated, with regard to the amount of the overdraft, is as follows: Mr. Howard, the as-

sistant cashier for respondent, not being able to state the amount of the overdraft from his own knowledge, testified: That in the month of April (year not given) he had a conversation with appellant in respondent's bank, at which time he called appellant's attention to the overdraft of Caravelis and company, and then stated that it amounted to the sum of $330.90 as disclosed by respondent's books; that he (Howard) demanded payment thereof from appellant as a member of the firm of Caravelis & Co.; that appellant then agreed to make some efforts to have it paid; that in pursuance of such conversation appellant, in a few days thereafter, made a payment of $60, and, in a day or two later another one of $49.20, which payments were made to be and were applied on the overdraft reducing it to the extent of the sum of the two payments. The original deposit slips evidencing these two payments were introduced in evidence, and show that the payments were made, respectively, on the 17th and 20th of April, 1906. Mr. Howard further testified that no further charges were added to the overdraft after the time aforesaid, except some interest, and possibly some cost. No time for reckoning the interest is given, nor is anything stated with regard to the amount of the cost, if any in fact was added. When appellant testified as a witness in his own behalf, his attention was directed to Mr. Howard's statements as detailed above. He admitted that he had had a conversation with Mr. Howard, that Mr. Howard simply called appellant's attention to the overdraft of Caravelis & Co., which, as he remembered it, was claimed by Howard to be about $300, that appellant then informed Mr. Howard, that he (appellant) was not a member of that firm and not a partner and not liable on the account, but, in view that he (appellant) had brought quite a number of Greeks to the bank and had introduced them to Mr. Howard, he (appellant) felt somewhat ashamed that his countrymen should fail in paying their debts, and on that account felt interested in the matter. He, accordingly, told Howard that he knew of some Greeks who were indebted to the firm of Caravelis & Co., and that he would try to collect some of

the money due that firm from these men and pay it on the overdraft, and that, in pursuance of this, he did make the payments as before stated, and not otherwise. As further evidence of the amount of the overdraft, the court, over the objection of appellant, also admitted loose pages of respondent's books of account kept by it in the ordinary course of business by different bookkeepers, showing the original entries of the account as kept by respondent between it and Caravelis & Co. None of the bookkeepers was called to verify the account, and Mr. Howard could not personally verify its correctness; but he, in effect, testified that the entries were made in due course of respondent's business by bookkeepers whose duty it was to make them. As to whether the preliminary proof is sufficient or not to entitle the party offering the account books in evidence is, in the first instance, a question to be passed on by the trial court. In 1 Elliott on Evidence, section 474, the author states the rule in the following language:

"The question as to whether or not account books or entries therein should be admitted in evidence is, in the first instance, a question to be decided by the court. Before the admission of this evidence, the court must be satisfied that the shop books offered in evidence are fairly kept, in good faith, as a contemporaneous record of daily transactions."

The record in this case is not such that from it alone we are disposed at this time to review the ruling of the trial court with regard to the admission of the account in evidence. To do this is likewise unnecessary for the reason that, if we assume that the account was properly admitted, it still did not tend to prove the amount of the overdraft for the following reasons: The entries are made in so brief a manner that a stranger to the account or one not versed in that particular style or system of bookkeeping would not be able to say what many of the items of the account referred to signified. The account, as kept, showed only different columns of figures signifying dates and amounts. Now and then entries of figures are found which in another

column are followed by the letters "O. D." The figures evidently refer to the amount of whatever "O. D." stands for. There is, however, not a word of evidence showing what these symbols stand for, and one person may take them to mean one thing, while another may take them to mean something else. As we have pointed out, the manner in which the account was kept was not self-explanatory. So far as we are advised we know of no rule of law whereby a court or jury takes judicial knowledge of the different methods or systems of bookkeeping. It may be, and no doubt is, perfectly proper for a bank, or any other business concern, to keep accounts so that they are understood by those whose duty it is to understand them, although not understood by all; but it does not follow that, because an expert bookkeeper understands the meaning of all the symbols, words, and characters used, all must do so. In this instance the entries are in columns, as follows:

26 O. D.      250      292.36

The first figures are entered in the date column, followed by the letters "O. D." The figures "250" are in the column headed "deposits," and the remaining figures in the column headed "balances." There are two other columns, headed "checks" and "totals." It is claimed that "26" gives the day of the month, "O. D." means overdraft, and "250" stands for the amount of the overdraft. It may be so, but no one not versed in the method of keeping the account could say with any degree of positiveness that these symbols and figures mean precisely this, and nothing else. It is an easy matter for any one to explain the system or method of bookkeeping adopted and used by him so that all others may understand it as well as he. Where the entries are not stated in a form which is self-explanatory, they should be explained by proper evidence. This is just as essential as it is to identify the parties and to connect them with the account, or to make any other explanation so as to make the account relevant and to bring it within the understanding of the court or jury. In view of the evidence, the account in this

instance was such that no court could assume that the figures "250" in one column, preceded by the letters "O. D." in another column, meant overdraft, and the amount thereof at a given date, and that it meant nothing else.

This therefore brings us to the question: Is the amount of the overdraft established by other evidence? Respondent's counsel contend that it is so established by the admissions of appellant. The alleged admission we have already referred to. It was made in a conversation had between Mr. Howard and appellant in April, 1906, after which appellant made two payments, one of $60 and the other of $49.20. All that Mr. Howard claimed, however, was that appellant did not dispute the amount when he was told that it was $330.90, and not that the appellant directly admitted its correctness. The appellant, however, stated that he disclaimed any liability because he was not a partner of the firm of Caravelis & Co., and hence not connected with the account. If we should assume therefore that the mere fact that appellant did not dispute the amount of the overdraft at that time amounts to an admission on his part, which, to say the least, is very doubtful, it would still not be an admission of the amount as found by the court. Mr. Howard says the amount was $330.90, and that no additions were made thereafter, except interest, and possibly some items of cost; but what those were does not appear. The alleged admission was made in April, 1906, and this action was commenced in June of the same year. If the amount of the overdraft at that time was $330.90, and this amount is credited with the two payments amounting to $109.20, it would leave a balance due on the overdraft of only $221.70 in April, 1906, or about two months before this action was commenced. The finding and judgment is for $250, with interest thereon from the time the action was commenced. The finding therefore is not supported by the evidence.

If an overdraft may be established by such slender proof in a case involving a matter of only $250, it may be when any amount is involved. The mere fact that accounts between a bank and its customers are usually kept with much

precision and care, as they must be, and that balances are always susceptible of being established with reasonable certainty, in and of itself is a sufficient suggestion why proof of an overdraft and the amount thereof should be more specific and certain than it is in this case to authorize a recovery. This is especially true in a case where the party sought to be charged claims to be a stranger to the account and has no personal knowledge of many or none of the transactions therein contained. By this we do not mean that banks must prove their accounts with a greater degree of certainty than others, nor that it is always necessary to verify them by the oath of the particular bookkeeper who made the entries therein; but what we mean is that the law always requires that, where a particular kind or class of evidence is available which in its nature is best calculated to establish the question in issue, it should be produced if required by the adverse party. When such evidence is produced, in order to be of any avail, it should be self-explanatory. If it is not so, it should be explained to the court or jury, so that it may be fully understood and given such weight as it may be entitled to.

For the reasons therefore that the finding of the court with regard to the amount of the overdraft is not supported by any evidence, and that the evidence is, to say the least, very doubtful as to whether any amount has been proved, the judgment is reversed, and the cause remanded for a new trial; appellant to recover costs on appeal.

McCARTY, C. J., and STRAUP, J., concur.

ON REHEARING.

STRAUP, J.

In this case a petition for rehearing was filed, principally on the ground that the appeal was not taken within time. The question presented being one challenging the authority of the court to consider the case on the merits, we, upon

reading and considering the petition then entertaining some doubt on the question, granted a rehearing.

The action was originally brought in the city court by the plaintiff, the respondent here, against the three defendants, Caravelis, Stathakos, and Skliris, as partners, under the firm name of Caravelis & Co. In proceedings there had Mr. James Ingebretsen represented the plaintiff, Mr. Russell G. Schulder, the defendants Caravelis and Stathakos, and other counsel the defendant Skliris. Judgment was there had in favor of the plaintiff and against the three defendants. Skliris prosecuted an appeal to the district court. In proceedings there had Mr. Ingebretsen represented the plaintiff, Mr. Schulder, also the plaintiff and the two defendants represented by him in the city court, and Mr. Frank J. Gustin the defendant Skliris. A judgment was there also obtained in favor of the plaintiff and against the three defendants, which was entered on the 17th of June, 1907. From that judgment Skliris has prosecuted this appeal. On the 19th day of June, 1907, Skliris filed and served in the court below a notice of intention to move for a new trial. The motion was submitted on the 21st day of September, 1907, and was overruled on the 9th day of November, 1907. The notice of appeal was served and filed on the 2d day of March, 1908. Our statute provides that an appeal may be taken within six months from the entry of judgment. Section 3301, Comp. Laws 1907. Our uniform holding has been that in case of filing and serving a proper notice of motion for a new trial within the time allowed by the statute, or enlarged by order of court, the judgment does not become final until the motion has been disposed of, and that an appeal may be taken from the judgment within six months after the disposition of such motion. If therefore the appellant filed and served a proper notice of motion for a new trial, his appeal is in ample time. The respondent contends that the appellant did not file or serve such a notice. The contention made in that regard is that the notice of motion which was filed and served by him was addressed only "to the plaintiff, above named (Walker Bros., etc.), and

to James Ingebretsen and Russell Schulder, its attorneys,"
notifying them that "S. G. Skliris (the appellant here) in-
tends" to move for a new trial, and that the service of the
notice was accepted only by "James Ingebretsen and Russell
G. Schulder, attorneys for plaintiff." From this it is argued
that, since the notice of motion for a new trial was made
only by Skliris, and was addressed only to the plaintiff, and
its attorneys, and not to the other two defendants, or their
attorneys, and since the attorney Schulder expressly accepted
service only for the plaintiff, there was no notice given to or
service had upon either of the defendants Stathakos or
Caravelis, or their attorney. Hence all the adverse parties
were not notified the service of notice of the motion insuffi-
cient, the district court without jurisdiction to entertain the
motion because not having before it all the parties whose
rights might be affected by the action invoked, the finality
of the judgment entered June 17, 1907, not suspended, and
hence the appeal not in time.

The difficulty, however, is that the instrument or docu-
ment to which our attention has been directed by counsel,
and from which it is contended by them that the facts in re-
spect of the filing and service of the notice of the motion as
claimed by them are made to appear, is not a part of the
record and is not properly before us. The record on appeal
consists of the judgment roll and the bill of exceptions as
settled, signed, and certified to by the judge who tried the
case. To properly inform us with respect to the proceedings
had in a case before the trial court, it is essential that such
information be conveyed to us, either by the judgment roll
or by a bill of exceptions. Unless a document claimed to be
of such proceedings is either a part of the judgment roll, or
made a part of the bill of exceptions, it is not a part of the
record on appeal, and cannot be considered by us. In this in-
stance counsel point to a document which presumably was
sent up from the county clerk's office together with the record
on appeal (the judgment roll and bill of exceptions), and
which purports to be a notice of intention to move for a new
trial, and is addressed and purports to be served, as con-

tended for by counsel for respondent; but a notice of intention to move for a new trial is not a part of the judgment roll. Sections 3197, 3151, 3219, Comp. Laws 1907. In order that we may properly be apprised that a motion for a new trial was made, the manner in which the notice therefor was given, filed, and served, and the proceedings had in respect, thereof, such matters must be made to appear by a bill of exceptions. Now, again, in this instance, the document, pointed to as the notice of motion for a new trial, is not a part of nor incorporated in the bill of exceptions, nor is it in any wise therein referred to or identified. The bill of exceptions itself contains recitals showing that the appellant, within the time allowed by the statute, duly filed and served a notice of intention to move for a new trial, the grounds upon which the motion was based, the submission of the motion, and the overruling of the same on the 9th day of November, 1907. The bill itself shows all the essentials of a proper notice, including due service and filing. It is only by leaving the bill of exceptions, the record before us, and looking at something else which is not a part of it, that the controversy, with respect to an improper or defective notice or of an insufficient service thereof, arises. When the trial judge has certified to us in a bill of exceptions, settled, allowed, and signed by him, the proceedings showing a proper service and filing of a motion for a new trial, we are no more justified to leave it and determine the facts of such proceedings by inspection and taking cognizance of some stray document found among the papers, but not a part of the record on appeal, than to disregard the settlement made by the trial court with respect to the testimony of a particular witness, and determine what his testimony was by looking at some affidavit purporting to have been on file in the county clerk's office, but which is not in the bill of exceptions, and not a part of the record on appeal. It is the habit of some county clerks to send up to us, or by counsel in the case causing them to do so, not only the papers constituting the judgment roll and bill of exceptions as settled, signed, and allowed by the trial judge, but also everything else

found about the office and which they think may in any wise pertain to the case. So, here, there has been sent up to us not only the judgment roll and the bill of exceptions, but also what purports to be a complete transcript of the justice's docket, copies of memoranda of costs and disbursements served and filed in both the city and district courts, subpoenas and writs of execution, affidavits, notices of setting the case for trial, numerous interlocutory orders, a notice of intention to move for a new trial, and presumably about everything found in the county clerk's office, and on file in the case. These matters not having been settled by the trial judge, and not being in the bill of exceptions, are therefore not properly before us. Counsel could as well, if they desired to raise some question with respect to the cost bill, ask us to inspect and take cognizance of the purported memoranda of costs and disbursements, but which are not in the bill of exceptions, as to ask us to inspect and take cognizance of a purported notice of intention to move for a new trial, which likewise is not contained in the bill of exceptions. Confining our examination and inspection alone to the bill of exceptions, it is very clearly made to appear that due service and filing of a notice of intention to move for a new trial was had, and hence the appeal taken in time. We are therefore of the opinion that the motion to dismiss the appeal should be denied.

Upon further consideration of the case, we are well satisfied with the conclusion reached by us in the former opinion written by Mr. Justice Frick. The order, therefore, heretofore made by us, reversing the judgment and remanding the case for a new trial, is confirmed.

McCARTY, C. J., and FRICK, J., concur.