# FERNELIUS v. FERNELIUS et ux.

No. 5028.  Decided March 6, 1931.  (296 P. 244.)

*David J. Wilson,* of Ogden, and *Willard Hanson* and *A. H. Hougaard,* both of Salt Lake City, for appellant.

*P. C. Evans,* of Salt Lake City, for respondents.

ELIAS HANSEN, J.

This action is founded upon a written contract for the lease of two tracts of land located in Davis County, Utah. By his complaint, plaintiff seeks to recover possession of the premises leased and to recover a judgment against the defendants for money alleged to be owing to the plaintiff under the terms of the lease. In the court below, the plaintiff was denied possession of the leased property, but was awarded a judgment against the defendants for the sum of $265.65 and costs. The plaintiff appeals from that part of the judgment whereby he is denied possession of the leased premises. No complaint is made of the money judgment by either of the parties.

The plaintiff is the father of the defendant Edward A. Fernelius. The defendants are husband and wife. On October 3, 1919, plaintiff and his wife, Mary Fernelius, entered into a written contract of lease with the defendants. So far as material to a review of the questions presented on this appeal, the lease provides as follows:

"Whereas the parties of the first part (plaintiff and his wife) are now the owners of and in possession of their farm in South Weber, consisting of two tracts of forty-eight (48) acres and twenty (20) acres, respectively, and the parties of the first part are desirous of letting their son and his married wife take care of said farm and also of the parties of the first part, it is mutually agreed as follows:

"Both parties are to live on said farm, and in the house that is now used as the home of the parties of the first part. * * *

"The parties of the second part agree to farm and till the whole of said farm in a good husbandlike manner, including orchard, fruit,

grain, vegetables, live stock, and every thing else that may be raised or grown on said farm; and the parties of the first part are to give what assistance in farming and looking after said farm as they desire to furnish voluntarily, that is to say that they desire to work just as much as they desire, in as much as they are getting old. The parties of the first part upon the execution of this contract hereby turn over all live stock, cattle, horses, chickens, pigs, and all feed therefor that is at present on the farm, and all farm implements to the parties of the second part. And the parties of the first part are to forever maintain their residence on said farm; and the parties of the second part are to pay, or give, or turn over to the parties of the first part one-half of all the net income from said farm in whatever form the income may take, after deducting all running expenses of said farm, that is to say—the parties of the second part are to turn over to the parties of the first part one-half of all grain raised, vegetables fruit, and the like, or the money derived from marketing the same. It is further provided that the parties of the second part shall be entitled to one-half of the increase of all the live stock, pigs, chickens, and so forth, and that the parties of the second part never receive their share of one-half of the income without the consent of both parties upon the division. It is further provided that the parties of the second part shall do the marketing of all the products.

"It is further provided that in the event the parties of the second part or either of them ever work away from the farm or off of the farm, single handed or with the team, said parties shall turn to the parties of the first part one-half of all earnings so earned. Each family is to support itself upon its own income.

"In the event that either party is dissatisfied or becomes dissatisfied with this agreement, or desires to terminate this contract, they may do so by giving to the other parties ninety (90) days notice in writing, and before the expiration of the 90 days the parties of the second part shall surrender the entire possession to the parties of the first part, and an equitable settlement shall be made at that time of all the income and products of the farm at said time. It is understood that the parties of the first part shall always remain on said farm; that in the event of a misunderstanding the parties of the second part shall surrender possession of said farm;

"In the event that this contract continues until the death of both of the first parties, that is to say until the death of the survivor of the first parties, then the parties of the second part are to receive one half of the entire real estate above mentioned consisting of about 68 acres, and all of the machinery, cattle, horses, feed, live stock, and fruit on said farm at said time. The other one half of all of said real estate is to be divided equally among all the children of the

parties of the first part, including this son, at the death of either survivor of the parties of the first part; the one-half falling to the parties of the second part shall include all buildings and the 20-acre land on the Bench and the land south of Bambrough Canal about 24 acres. The land north of Bambrough Canal about 24 acres shall be equally divided among all the first parties' children."

Upon issues joined, a trial was had to the court sitting without a jury. The court found in substance that the written contract of lease heretofore set out was entered into; that, prior to the execution of the lease, the defendants and the plaintiff and his wife, Mary Fernelius, occupied the leased premises under an oral agreement containing substantially the same terms and conditions as the written lease; that the defendants have substantially performed the terms and conditions of the written lease; that, after the written lease was executed, Mary Fernelius died, and in the summer of 1928 the plaintiff remarried a widow with a family of adult children; that, after the plaintiff remarried, he, his wife, and her children, and the defendants jointly occupied the house located on the leased premises; that the defendants have threatened to molest and injure plaintiff and have done him bodily harm, and threatened to continue such conduct, and may greatly injure plaintiff in his enjoyment of the benefits of said contract and properties; that, more than ninety days before this action was begun, the plaintiff served upon defendants written notice of his intention to terminate the lease; that the defendants have by their years of labor upon said premises acquired such a vested interest therein as to make it inequitable and unjust to permit the plaintiff to terminate said agreement arbitrarily or because of any friction or disagreement existing between the second Mrs. Fernelius and her family and the defendants, or for any trivial failure on the part of the defendants to conform to the letter and spirit of said agreement; and that such causes as were assigned by the plaintiff for a termination of the lease are trivial and wholly unsubstantial, and that the attempt on the part of the plain-

tiff to terminate said agreement was to all intents and purposes wholly arbitrary; that the defendant Edward A. Fernelius has earned by his labor off of said premises and in the employ of Davis county the sum of $80 of which sum he is indebted to the plaintiff in the sum of $40; that plaintiff has voluntarily advanced for the purchase of seed and the payment of taxes and some other incidentals the sum of $451.30; and that he is entitled to be reimbursed by the defendants for one-half of the sum so expended.

No complaint is made that the evidence does not support the findings of fact. The evidence is not brought here for review, and therefore we must assume that the findings made by the trial court, so far as they are not in conflict, are supported by the evidence.

The plaintiff contends that the facts found are inconsistent with each other, that the decree is inconsistent with the findings, and that under the facts found the plaintiff is entitled to a judgment awarding him the possession of the premises in controversy. The defendants contend that the complaint does not state facts sufficient to entitled plaintiff to a judgment awarding him the possession of the leased premises, and that the judgment denying plaintiff the right to rescind the contract of lease is supported by the facts found. It is claimed by the defendants that the complaint fails to state a cause of action because it is not therein alleged that an equitable settlement of the rents and profits derived from the premises had been offered or arranged prior to the time this action was brought. The claim is without merit. By the terms of the contract, the defendants are to cultivate the farm, care for the live stock, and market the products produced, and turn over to the plaintiff one-half of the net income. If the defendants claim that they have not received their just proportion of the profits derived from the venture, such claims should be set out in their answer by way of counterclaim. No such counterclaim has been filed, and, so far as appears, the defendants have received their share of the rents and profits. It

is next urged by the defendants that, before the plaintiff may terminate the contract and repossess the leased property, his claim of dissatisfaction must be made in good faith, and must be founded upon some real substantial grounds. The rule of law contended for by the defendants finds support in a number of cases cited by the defendants. The rule applies where a contract relates to a thing which is desirable only because of its commercial value or its mechanical fitness. It is usually applied where the contract is in whole or in part executed, and an injustice will result if the promisor be permitted to evade payment for work done or material furnished under the mere pretext that he is dissatisfied. A different rule is generally applied where fancy, taste, sensibility, or judgment are involved. 13 C. J. 675. The rule contended for by the defendants does not aid them in the instant case. The trial court found that the defendant had failed to pay to plaintiff $40 which was owing to him under the terms of the contract, that plaintiff had advanced $451.30 for the purchase of seed, the payment of taxes, and some other incidentals, and that defendants had failed to reimburse plaintiff for one-half of the money so expended, and that the "defendants have threatened to molest and injure plaintiff, and have done him bodily harm, and threaten to continue such conduct and may greatly injure plaintiff in his enjoyment of the benefits of said contract and properties." Under such a state of facts plaintiff's dissatisfaction with the manner in which the defendants have been carrying out their part of the contract of lease is fully justified. It is difficult to perceive how the plaintiff could be satisfied with an arrangement whereby he is to share his home with his son and daughter-in-law under circumstances where they have done him bodily harm and threaten to continue such conduct, and may greatly injure him in the enjoyment of his properties.

Moreover, the contract provides that either party may terminate the contract, not only if dissatisfied therewith, but if either party desires to terminate the same, and also

in the "event of a misunderstanding the parties of the second part (defendants) shall surrender possession of said farm." In construing a contract, some effect should be given to all of the language used therein. The provision contained in the contract that "in the event that either party * * * desires to terminate this contract they may do so" must be given effect. From this language it is clear that the parties intended that either party had the right to terminate the contract at will.

Nor is there any fact found by the trial court that justified the conclusion that the defendants have "acquired such a vested interest in the farm as to make it inequitable and unjust to permit the plaintiff to terminate the agreement." The contract provides specifically what the plaintiff and defendants shall receive during the time the contract is in effect, and that, in the event of its termination by either party, "an equitable settlement should be made at that time for all of the income and products of the farm at said time." Thus, if the defendants have not received a reasonable or equitable compensation for their services, they are entitled to the same upon a termination of the contract. When they are so compensated, it cannot be said that they have suffered any injury because of the termination of the contract. Under the facts found by the trial court, the plaintiff was entitled to a judgment granting him the possession of the leased premises. If the defendants have any claim for additional compensation for services rendered, they should be permitted to amend their answer and set out such claim. The judgment is reversed and the cause remanded to the district court of Davis county, with directions to grant a new trial. Appellant is awarded his costs.

CHERRY, C. J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.