## O'GORMAN v. UTAH REALTY & CONSTRUCTION CO. et al.

No. 6456.   Decided October 19, 1942.   (129 P. 2d 981.)

See 4 C. J. S., Appeal and Error, sec. 1207; 26 R. C. L., 1089 (8 Perm. Supp., 5842).

For opinion on rehearing, see 102 Utah 534; 133 Pac. 2d 318.

*C. E. Norton,* of Salt Lake City, for appellant.

*Ball & Musser, Edward F. Richards,* and *Romney, Faux & Boyer,* all of Salt Lake City, for respondents.

WOLFE, Justice.

Plaintiff, the buyer under a real estate contract for the sale of real property, brought this action to rescind on the ground of fraud and for the return of money paid on account. Defendants Hampton denied fraud and alleged by counter-claim that they had exercised their option to forfeit the contract on account of plaintiff's default. Plaintiff replied setting up a purported estoppel. The Utah Realty and Construction Company as agents for the Hamptons denied fraud. The Court gave judgment for the defendants on this counterclaim and against plaintiff on her charge of fraud. From this judgment plaintiff appeals.

Mrs. O'Gorman, a widow 55 years of age, came to Salt Lake City from the east and entered into negotiations with the Utah Realty and Construction Company acting as agents for Eli and Ruth Hampton, defendants and respondents herein, for the purchase of two duplex houses. A so-called uniform real estate contract was entered into between the Hamptons and appellant on December 6, 1940, in which appellant, as purchaser, covenanted among other things, to pay a total purchase price of $13,000 payable $1,000 down, $85, plus one-twelfth of the annual taxes each month and interest until paid in full. She further covenanted to remodel and construct a five-room apartment in the attic of one of the duplex houses, to be completed in six months.

Plaintiff took possession on December 31, 1940, and, it is alleged, paid $1,000 down, $212 on the contract, and $800 for construction work on the attic; a total expenditure of $2,012.00. Plaintiff, by her counsel, prayed for a judgment of $1,800. No mention was made in the prayer of the $212 expended in the performance of the contract.

To the complaint, the defendants filed general and special demurrers. The court sustained the demurrers. Plaintiff filed an amended complaint. Defendants Eli and Ruth Hampton filed an answer and counterclaim denying the allegations set forth in the amended complaint, admitting a contract of December 6, 1940, and that the plaintiff went into possession of the premises, paid $1,000 down payment, and the further sum of $85 on or about January 31, 1941, and $85 on or about March 11, 1941. Defendants Hampton further allege that by the terms of the contract, the defendants at their option would be released of all obligation to convey the premises, and that all payments made by the purchaser should be declared forfeited as liquidated damages if the purchaser defaulted on the contract; that on March 10, 1941, the defendants did declare such a forfeiture and gave the plaintiff notice to vacate within five days. That the plaintiff has refused to surrender possession and that the plaintiff has damaged the premises to the extent of $300.

They pray that the contract be declared terminated, that the payments made by the plaintiff be declared forfeited, that defendant be given treble damages and the reasonable rental value of premises since March 15, 1941, and that a receiver be appointed pending the outcome of the action. The Utah Realty & Construction Company and Roy Chapman answered denying all allegations of the amended complaint admitting only that at the time mentioned they were agents of Eli and Ruth Hampton and that plaintiffs paid the seller $1,000. In reply to the counter-claim the plaintiff alleged that the Hamptons should be estopped from declaring a forfeiture under the contract because they had mortgaged the premises and assigned the contract of sale to the Tracy Loan and Trust Company and thereby prevented strict compliance with the contract.

A receiver was appointed by the court as requested by the defendants Hampton. They proceeded to trial and judgment was given in favor of the defendants. From this judgment plaintiff appeals.

There are seven assignments. They are not clear cut, are argumentative, and leave doubt in places as to the real basis of the assignment. However, we shall, in every case, give each assignment the benefit of the doubt and when it seems to have been intended to attack a ruling, examine that ruling for its correctness regardless of the basis which may be assigned for its claimed incorrectness.

The first assignment urges that the general demurrer to the complaint was improperly sustained. If there was any error in such ruling, it was cured by pleading over. 1 Bancroft on Code Pleading, § 225, p. 374; *Zion's Savings Bank & Trust Co.* v. *Mountain-Lakes Poultry Farms, Inc.*, 98 Utah 410, 419, 100 P. 2d 212; *Voyt* v. *Bekins Moving & Storage Co., Or.,* 119 P. 2d 586; *Alhambra Transfer & Storage Co.* v. *Muse,* 41 Cal. App. 2d 92, 106 P. 2d 63.

The second assignment asserts that the court erred in not sustaining the demurrer to the counter-claim. Before there was a ruling on the demurrer to the counter-claim,

the counter-claim was amended. There was no demurrer to the amended counter-claim. There is nothing in the record brought to this court which shows a ruling on the demurrer, nor is there an order denying a motion to have the demurrer argued or have the court rule thereon. It was certainly as much the duty of the plaintiff as it was of the defendant to have a day set for argument and a ruling on the demurrer. Therefore, there does not appear in the record any ruling on the demurrer which can be attacked by assignment. The failure of plaintiff's counsel in this regard cannot be urged as a basis for reversal of the court's judgment.

The third assignment urges error in that the court made no finding of fact on the material issue of estoppel. In her reply the plaintiff alleged that the Hamptons should be estopped from declaring a forfeiture under the contract because they had assigned the contract to the Tracy Loan and Trust Company and thereby prevented strict compliance by the plaintiff with the terms of the contract. This did not purport to be an allegation of incapacity on the part of the Hamptons to declare a forfeiture on the theory that they were no longer the owners of the contract. The counter-claim of the defendants is based on their right to declare a forfeiture under the contract. An allegation that the defendants had assigned the contract and therefore had no capacity to declare such a forfeiture would of course, require the court to make a finding on this issue. But such was not the intendment of this pleading. The allegation was made as a basis of an estoppel and not incapacity. In effect, estoppel admits ownership of the contract in the Hamptons and admits that they have a technical right to declare a forfeiture but asserts they should be estopped from showing the true facts. If the plaintiff contended that by assignment the defendants Hampton had put it beyond their power to declare a forfeiture estoppel would not have entered into the picture. Estoppel is consistent only with a right to

forfeit which it is claimed the court should not, for reasons of equity, permit.

It is well established that a direct issue of a specific material fact requires a finding on that issue. *Hall* v. *Sabey*, 58 Utah 343, 198 P. 1110; *Miller* v. *Mt. Nebo Land & Irr. Co.*, 37 Utah 1, 106 P. 504. There must be a finding on all material issues. *Prows* v. *Hawley*, 72 Utah 444, 271 P. 31; *Everett* v. *Jones*, 32 Utah 489, 91 P. 360. Hence, if in her reply plaintiff pleaded a good estoppel, the court erred in not making a finding on the issue thus raised. The facts alleged as a basis for the estoppel are that the defendant by mortgaging the premises and assigning the contract prevented the plaintiff from proceeding with construction of the new apartment in the attic of one of the houses. These facts do not raise an estoppel. There is no allegation of how the assignment and mortgage interfered with the plaintiff's right to proceed with construction. Admittedly, they were made subject to the plaintiff's rights. The plaintiff had possession of the premises. No facts are set out by the reply from which the court can hold the defendants estopped from declaring the forfeiture under the contract. There was no prejudicial error in this regard.

The next three alleged errors may be considered together. Plaintiff claims the court erred in appointing a receiver; in failing to allow plaintiff to file a supplemental complaint and to tender specific performance to the Tracy Loan and Trust Company; and by its refusal to grant a new trial.

There is no transcript of the evidence before the court. We must therefore assume the findings of the trial court are supported by evidence. *Raphael* v. *Wasatch & J. V. R. Co.*, 34 Utah 97, 95 P. 1008; *Fernelius* v. *Fernelius*, 77 Utah 395, 296 P. 244; *L Bar Cattle Co.* v. *Board of Trustees*, 46 N. M. 26, 120 P. 2d 432; *Hecla Gold Mining Co.* v. *Gisborn*, 21 Utah 68, 59 P. 518. We can not say the court erred in appointing a receiver, or in refusing to allow the plaintiff to file a supplemental complaint and tender specific performance of the contract, or in overruling a

motion to appoint a guardian ad litem for we have no transcript of the evidence before us upon which these orders were based. We have no possible way of knowing upon what the court based its orders and must assume that such orders are correct. The affidavits of plaintiff's counsel on the question of plaintiff's sanity and the motion for the appointment of a guardian ad litem are attached to the judgment roll but may not be considered by this court for they are not properly here. *Lindsay Land & Livestock Co.* v. *Smart Land & Livestock Co.*, 43 Utah 554, 137 P. 837. Such matters must be brought to the attention of this court by a bill of exceptions.

The same holds true in the case of the trial court's refusal to grant the motion for a new trial. Such a motion is not a part of the judgment roll unless made so by including it in a bill of exceptions. *Walker Bros.* v. *Skliris,* 34 Utah 353, 98 P. 114; *Warnock Insurance Agency* v. *Peterson Real Estate Inv. Co.,* 35 Utah 542, 101 P. 699.

The affidavits in support of the motion for a new trial are set out verbatim by the appellant in her brief and are argued at length by appellant through her counsel. The brief of the appellant is the only place where these affidavits appear. They are not made a part of the judgment roll by a bill of exceptions, nor are they even attached to the record as brought. Even were they physically attached to such record we could not consider them for they can only be brought to this court as a part of the bill of exceptions. *Hecla Gold Mining Co.* v. *Gisborn,* supra.

Finally, the plaintiff asserts that the findings and conclusions are contrary to the law and not supported by the pleadings and the admissions therein. The Hamptons allege that they declared a forfeiture under the contract on March 10, 1941, but also admit in their pleading that they received a payment of $85 on or about March 11, 1941. The findings of the court are to the same effect.

It is true that attached to the counter-claim of defendants Hampton is a copy of a notice dated May 10 declaring a forfeiture because "you have not paid the March, April and May payments." On demurrer by plaintiff to the counter-claim the court was confronted with this discrepancy of March 10 in the pleading and May 10 in the attached exhibit. As before stated, we do not know what disposition was made of such demurrer. If we were to speculate that the court, in passing on the demurrer, if it did so, concluded that there was a clerical error in the averment because of the specific statement in the exhibit showing the months in which default occurred, in the face of the date of March 10 appearing in the amended counter-claim and again in the findings we must presume that the evidence supported the date of March 10 as the time date of forfeiture. The record as it appears before us shows us that the Hamptons received a payment on the contract after they declared the forfeiture. The acceptance of the payment on March 11, 1941, must be construed as a waiver of the forfeiture which was declared on March 10, 1941. In the absence of a later declaration of forfeiture, the Hamptons could not have judgment on their counter-claim for it is based upon the right of the Hamptons to declare a forfeiture and upon their having done so. The judgment of the court can not be supported by the findings and the pleadings in this regard.

The brief of plaintiff contains an affidavit to the effect that the attorney for plaintiff was, at the time he acted for her, also attorney for the Utah Realty and Construction Company. No such affidavit appears in the record. There is a court order printed in the plaintiff's brief ordering "the affidavits and Exhibit A, otherwise known as Exhibit J submitted in support of a motion for new trial be made part of the judgment roll in this case." However, neither the order nor the affidavit regarding alleged dual and inconsistent representation appear in the record. We cannot, therefore, treat the affidavit as a part

of the record. We only devote attention to this phase of the case because counsel has devoted the entire part of his brief headed "Argument" on the legal contention that such alleged dual representation constitutes fraud in law and that a new trial should have been granted. It is only fair to the attorney who represented the plaintiff at the time of the negotiations leading up to the contract to say that the brief of respondent states that the Utah Realty & Construction Company of which he was alleged to be counsel at the time he represented the plaintiff was dissolved as a corporation nearly a year previously and that said counsel ceased to represent the corporation even before it was dissolved and never did represent the Hamptons or Chapman. If those facts are correct, it is understandable why the trial court refused to grant a new trial on the strength of the affidavits.

For the reason that the findings do not support the judgment, the cause is reversed with instructions to grant a new trial. Costs to appellant.

LARSON and McDONOUGH, JJ., concur.

WADE, District Judge (concurring).

I concur.

If the pleadings and findings, to the effect that the forfeiture was declared on March 10, 1941, were made by inadvertence, when, in fact, it was declared on May 10, 1941, it should not require a new trial to correct such mistake. But it is not clear that this was a mistake.

In her complaint, plaintiff alleged fraud; probably there was no technical fraud. But there may be defenses or grounds of relief from which he should not be precluded on account of a mistake by counsel. Especially is this true where great hardship will thereby be caused. Therefore, plaintiff should be given great latitude in amending or changing her pleadings on the new trial.

The appellant contends the facts appear to be about as follows: In December, 1940, plaintiff was a stranger in

Salt Lake City. She had recently lost her father, mother, and husband, and she had been injured in an automobile accident. With her mental faculties impaired and probably incompetent, and lacking sound business judgment, she approached the Utah Realty and Construction Company, with $2,000 to invest in home property. Through it she later contracted to purchase the Hampton property, consisting of two double houses, for $13,000. She paid $1,000 down and two monthly payments of $106 each. She spent $800 on the construction of a five-roomed apartment in the attic of one of the houses, which she contracted to have finished within six months. She had possession of the premises from December 31, 1940, to June 11, 1941, for which she paid a total of $2,012. The forfeiture clause provided that in case of her default, the seller had the option to declare her interest in the property terminated and keep all payments which she had made. To a person of sound business judgment it would probably have been apparent that, without other financial resources, she could neither build the five-roomed apartment in the attic nor make the monthly payments.

Under such facts, a court of equity surely can relieve plaintiff from the harsh forfeiture provision of this contract. As above suggested, she was probably incompetent, and the forfeiture clause probably provided for a penalty rather than for liquidated damages. Pomeroy's Equity Jurisprudence, Fifth Edition, Chap. II, § I, Par. 432 to 447, particularly 433, 435, and 442. *Biddle* v. *Biddle*, 1918, 202 Mich. 160, 168 N. W. 92. In either of the above events she would be relieved. She should be allowed to raise these questions and the court should carefully examine into them in order to do justice to all parties.

MOFFAT, Chief Justice (concurring).

I concur in the views expressed in the opinion of Mr. Justice WOLFE and also in the views expressed by Judge WADE.

PRATT, J., on leave of absence.