Cleo R. POWELL, Plaintiff
and Appellant,

v.

Dick E. BASTIAN et al., Defendants
and Respondents.

No. 13939.

Supreme Court of Utah.

Oct. 28, 1975.

Justin C. Stewart, Salt Lake City, for plaintiff and appellant.

Dallas H. Young, Jr., Ivie & Young, Provo, for Bastian.

S. Rex Lewis, Howard, Lewis & Peterson, Provo, for Prudential.

Glen J. Ellis, Maxfield, Gammon, Ellis & McGuire, Provo, for Sharp.

ELLETT, Justice:

Mrs. Powell owned a home on which there were two mortgages. There were also a judgment lien and a warrant for delinquent taxes due to the State of Utah. In all, the place was encumbered in an amount of approximately $13,000. The holder of the second mortgage threatened to foreclose because payments thereon were delinquent. Mrs. Powell tried to borrow money from Mr. Bastian, who understandably refused to make a loan. He did offer to purchase the property for $16,000, less the encumbrances, and to give Mrs. Powell an option to repurchase within three

months for $18,000, plus interest, on the money advanced.

Mrs. Powell deeded the property to Mr. Bastian, who gave her $3,055.34, the balance remaining out of the $16,000 purchase price after deducting the amount of the encumbrances.

Mrs. Powell tried to find a purchaser so that she could exercise her option to rebuy the home. Ultimately she listed the property with Boley Realty Company, and it was placed on the multiple listing service in Utah County.

Mr. Sharp, a broker, connected with the multiple listing service, but not with Boley Realty Company, located a prospective purchaser and prepared, on behalf of the purchaser, an earnest money offer which he presented to Mrs. Powell. Mrs. Powell accepted the offer to purchase but told Mr. Sharp that she had sold the property to a Mr. Bastian and that Sharp would have to secure his signature to the offer. She did not disclose the fact that she had an option to repurchase the property or that she claimed any interest in it.

Sharp then obtained Bastian's signature and arranged financing for his client through Prudential Federal Savings & Loan Association. At no time did Mr. Sharp have any reason to think that he represented Mrs. Powell. His client was the purchaser of the home from Bastian. He knew nothing about the relationship between Mrs. Powell and Mr. Bastian until several months later when Mrs. Powell took out bankruptcy[1] and he got several letters from her lawyer.

Prudential Federal Savings & Loan Association financed the purchase of the house from Mr. Bastian and distributed the funds according to the directions of the purchaser and Bastian. It was directed to pay to Mrs. Powell the surplus money remaining from the sale.

This suit was brought and the appeal taken because Mrs. Powell is unwilling for Bastian to get his $18,000, the sum which was to be paid him under the option agreement.

█ There is no record of the proceedings at trial before us, and we, therefore, assume the findings made by the trial judge are supported by the evidence given.[2] In fact, counsel for Mrs. Powell states in his brief: "The facts are set forth in the amended complaint and are substantially the same as the facts found in the trial court's findings of fact."

The findings made by the court contain the following:

\* \* \* \* \* \*

3. On the 17th day of June, 1970, plaintiff approached the defendant Dick E. Bastian and offered to sell her property to him for the sum of $16,000 provided that she could have an option for three months to repurchase the property in accordance with the provisions of an option agreement, Exhibit 2. Prior to offering to sell the property to the defendant Dick E. Bastian, plaintiff had requested the defendant Dick E. Bastian to make a loan to her. The defendant Dick E. Bastian had declined to make a loan to the plaintiff but did offer to purchase the above described real property.

\* \* \* \* \* \*

10. The court finds that the plaintiff Powell testified at all times that her arrangement with the defendant Bastian was one by terms of which she had an option to repurchase the property for a three month period. The court finds that there is no instance in the record in which the transaction between the plain-

1. The trustee in bankruptcy was a party to this matter at trial but refused to participate in the appeal.

2. *Buchanan v. Crites*, 106 Utah 428, 431, 150 P.2d 100 (1944); *O'Gorman v. Utah Realty & Construction Co., et al.*, 102 Utah 523, 129 P.2d 981 (1942); *Walker Bank & Trust Co. v. Neilson*, 26 Utah 2d 383, 385, 490 P.2d 328 (1971).

tiff Powell and the defendant Bastian was characterized as anything other than as a sale to Mr. Bastian with an option on the part of Mrs. Powell to repurchase the property.

Mrs. Powell argues that the selling costs should be taken out of the $18,000. She did not exercise the option within 90 days, or at all, and so really was not entitled to anything. However, Mr. Bastian treated the sale as if it were the exercise of the option and gave Mrs. Powell everything above the amount he claimed pursuant to the option agreement.

■ Since Mr. Bastian was obligated to furnish title insurance or an abstract to date to Mrs. Powell if she exercised the option, the trial court correctly gave her judgment for the cost of title insurance in the amount of $119, and charged that against Mr. Bastian's $18,000. The trial court also gave her judgment for the sum of $228.33 for taxes with which she had been charged in the sale to Mr. Bastian.

■ Prudential Federal Savings & Loan Association was dismissed from the case on a motion for summary judgment. It knew nothing of Mrs. Powell's claims and so was properly let out of the case.

■ Mr. Sharp, the realtor representing the purchaser, is entitled to his fee through the multiple listing service, and then Mr. Bastian should get his $18,000 less the cost of title insurance and taxes, and the balance should be given to Mrs. Powell.

We think Mrs. Powell was dealt with fairly and correctly by the trial court. The judgment is hereby affirmed. Costs are awarded to the respondents.

HENRIOD, C. J., and CROCKETT, J., concur.

MAUGHAN, Justice (dissenting):

For the following reasons, I dissent.

Plaintiff initiated this action, seeking equitable and legal relief for the damages she sustained in a transaction involving the sale of her home. From judgment of the trial court, denying her relief except for certain adjustments hereinafter noted, she appeals.

The equitable jurisdiction of this court being invoked, it is both the duty and prerogative of this court, pursuant to Article VIII, Section 9, Constitution of Utah, to review the law and the facts, make its own findings and substitute its judgment for that of the court below,[1] if it deems such justifiable.

In June 1970, plaintiff owned a home in Orem, Utah, which was encumbered by first and second mortgages. She had defaulted on the second mortgage and was confronted with imminent foreclosure proceedings. A friend suggested that she contact one Bastian to secure a loan. Bastian agreed to a transaction, whereby he would accept a warranty deed to the property and in return he would grant plaintiff a 90-day option to purchase the property from him or sell it to someone else and then repay him. Bastian agreed, in exchange for the deed, to pay off or assume certain indebtedness up to the sum of $16,000, and if the option were exercised to convey to plaintiff a fee simple title, free and clear. Plaintiff executed a warranty deed with no encumbrances noted thereon. Bastian issued the following checks: Mrs. Powell, $3,055.34; title insurance, $103; Lockhart Company (second mortgage), $5,545.-00; totaling $8,703.35. Although there was no writing to evidence the agreement, Bastian was alleged to have promised to pay or assume the first mortgage with Walker Bank in the sum of $7,296.65. In return for the warranty deed, as part of the option, plaintiff has the right to purchase the property, within 90 days, for the price of $18,000 plus interest, at the rate of 8 per cent per annum on $16,000, from the date of the option until the time it was exercised.

1. *Mitchell v. Mitchell*, 527 P.2d 1359 (Utah 1974).

This transaction was for the express purpose of giving plaintiff an opportunity to sell her home and recover her equity. Following this "sale," plaintiff attempted unsuccessfully to sell her home. On August 1, 1970, she listed her property for sale with Boley Realty. On August 18, 1970, a realtor, Dee V. Sharp, a defendant herein, presented plaintiff with an earnest money offer for $20,500, which plaintiff signed. She informed the realtor that she had "sold" the property to Bastian, whom she contacted and requested that he sign, which he did. The purchase of the property was financed by Prudential Federal Savings and Loan Association, which closed the transaction and disbursed the money.

Plaintiff was not informed of the time or place of the closing, by anyone. She had no representation, although it was due her. On the seller's statement, Bastians were listed as the sellers. The total sale price, including $70 for rent owed by the purchasers for 14 days, was $20,570. Prudential deducted the following from the sale price: Real property taxes for 8⅓ months, $228.33; Equity of Cleo Powell, $247.26; Title Insurance, $119; Recording, $6; Provo Adjustment Service (this was an outstanding judgment against Powell), $296.32; Real estate commission of D. V. Sharp, $630; Down payment, $600; Walker Bank (first mortgage), $6,783.12; State Tax Commission (this was an unpaid tax owed by Powell), $30; Orem City (special assessment on the home), $49.09. The total deductions were $8,989.12. The Bastians received $11,580.-88.

In her action, plaintiff alleged that the transaction between her and Bastian was not a sale but a security agreement cast in the form of an absolute deed and option to repurchase, at an advanced price; that this arrangement was unconscionable and usurious in that Bastian exacted $2,877.53 interest for the loan of $8,703.35 for a period of 85 days.

On appeal, plaintiff contends that the court erred in its determination that the arrangement between Powell and Bastian was a sale and not a security agreement disguised to cover up a scheme to collect usurious interest.

In *Kjar v. Brimley*,[2] this court stated, that whether a transaction is a sale or a security agreement is dependent on the intention of the parties as it existed, at the time of the execution and delivery of the instrument. Although a mortgagee may have no right to compel payment, a mortgage may exist; for the value of the land conveyed may represent an assurance of payment stronger than any promise or bond of a necessitous borrower or debtor —it did here.

Certain circumstances are particularly relevant in determining whether, by the transaction, the parties intended the agreement to have the effect of a bona fide sale or a security device: (1) The adequacy or inadequacy of the consideration, as compared to the value of the property; (2) the retention of possession; (3) is there payment of rent; (4) the prior negotiations of the parties; (5) the financial condition of the grantor at the time of execution of the deed; (6) the relationship of the parties—financial, business, debtor-creditor, etc.; (7) the party who is to pay the taxes; (8) the construction of improvements after the execution of the deed; (9) a contemporaneous agreement to repurchase; (10) the fact that the amount advanced was about the amount needed by the grantor to meet existing indebtedness; (11) and the subsequent acts of the parties as a means of discerning the interpretation they themselves gave to the transaction.[3]

In the *Kjar* case this court emphasized that if by the terms of the contract the grantor has the right to sell to a third person, such a fact is a clear indication of the

2. 27 Utah 2d 411, 414–415, 497 P.2d 23 (1972).

3. See *Merryweather v. Pendleton*, 91 Ariz. 334, 372 P.2d 335 (1962) ; *Weston v. Denny*, 14 Ariz.App. 1, 480 P.2d 24 (1971).

*intention* of the parties that title should not pass to the grantee.[4] In equity, a deed may be shown by parol evidence to have been given for security purposes only, in which event, equity will give effect to the intention of the parties.

The trial court found from the testimony of Powell, that she at all times intended to sell and transfer ownership of her property to the buyer, subject only to a limited right which she reserved to obtain another buyer within a specified time who would pay a higher price; that she at no time intended the monies advanced by the buyer to be a loan which she intended to pay and to keep her property. The court continued with the finding that the seller at no time intended to loan money to the buyer but rather intended to purchase the home. The trial court further found there to be no instance, in the record, in which the transaction, between Powell and Bastian, was characterized as anything other than a sale, to Bastian, with an option to repurchase by Powell.

The fact situation with which we are here confronted is not new. The artifice of a deed with an option to repurchase has a long history of attempts to deny, at the outset, a mortgagor's equity of redemption. Equity regards the substance rather than the form of a transaction; and its treatment of this type of ruse has been the uniform application of its jurisdiction, to afford relief.

Plaintiff claims the interposition of this court's equity jurisdiction on the ground of unconscionability—that claim is well made —and the conduct shown by the record is serious enough to justify use of the equitable powers of this court, to effect relief. A court of equity is a court of conscience —unconscionable acts are not permitted within its jurisdiction.[5]

In *Kawauchi v. Tabata* [6] the trial court made a finding similar to that in the in-

stant case. The appellate court explained in footnote 7, pp. 227–228 of 413 P.2d:

The court found not only that all parties intended to enter into a sale transaction, i. e. a conditional sale, but also that according to plaintiff's own testimony, he understood on March 24, 1958, that he would have three years within which to buy the property back at $117,000, that if he did not so buy back the property he would lose all rights in the property, and that when he signed the deed he would be passing title to defendants. We proceed on the premise that plaintiff did so understand.

The appellate court stated:

. . . Neither artifice nor form nor superficial declaration of intention will successfully obscure the true nature of the transaction. It is here that the court erred. In finding it to be the intention of all parties that the transaction should constitute a sale subject only to an option to repurchase, the court put undue emphasis on the form of the transaction. We do not doubt that the parties intended the form of words that was used, and intended thereby to cut plaintiff off from all rights unless he exercised his option within the three-year period. But will the court permit this purpose to be accomplished? We must enforce not only the policy against renunciation beforehand of the right of redemption but also the statute against usury. . . .

The court cited the ruling that where there has been a sale absolute in form and an option to repurchase given, and the claim of usury is made, the form of the transaction will be disregarded and its substance will control. The court stated:

A separate instrument (here the lease with option to repurchase) is a defeasance if it grants an absolute right to a reconveyance upon payment, is contemporaneous with the deed, and the two to-

---

4. Also see *Bybee v. Stuart*, 112 Utah 462, 189 P.2d 118 (1948) ; *Gibbons v. Gibbons*, 103 Utah 266, 135 P.2d 105 (1943).

5. *Marchant v. National Reserve Co. of America*, 103 Utah 530, 551, 137 P.2d 331 (1943) ; 27 Am.Jur.2d, Equity, Sec. 24.

6. 49 Haw. 160, 413 P.2d 221, 227–228 (1966).

gether constitute security for a debt. 1 Jones, Mortgages, §§ 294–96 (8th ed.) . . .

In the instant action, the parties are in substantial agreement as to the facts. Powell was a necessitous person, deeply in debt including a default on a second mortgage on her home. She was desirous of preserving her equity in her home which she had accumulated over a period of 17 years. Bastian was willing to advance certain sums so that Powell might have an opportuniy to find a purchaser for her home, but Bastian demanded a conveyance. The "purchase price" was based on the funds needed immediately by Powell and not on the market value of the house. Both parties understood that the market value was to be realized by Powell, when she found a buyer. Powell continued in possession of the house and to effect improvements to enhance its salability. Powell actively sought a buyer and contractually bound herself to a realtor in her efforts to sell her home. Bastian, at all times conducted himself as a creditor and not as a vendee, his sole interest was in collecting his $2,000 bonus plus 8% on the alleged sale price of $16,000 to him. He collected this munificent sum at the closing, and Powell as the true owner was left with the expenses of a vendor. These facts impel one conclusion, regardless of the form, this was intended as a security transaction by the parties.

Plaintiff, from the inception of this action, has contended that her transaction with Bastian whereby he gained $2,877.53 interest on a loan of $8,703.35 for 85 days was unconscionable, and that it is. This is an interest rate in excess of 70 per cent per annum. This transaction was devised to conceal a usurious interest rate and to nullify the debtor's right of redemption on her property.

Section 70B–5–108, U.C.A.1953, as amended, 1969, provides that if the court as a matter of law finds the agreement or any clause of the agreement to have been unconscionable at the time it was made the court may refuse to enforce the agreement, or it may enforce the remainder of the agreement without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. This section is no more than a statement of this court's inherent equity jurisdiction.

At the time the agreement was made, if Bastian had extended the $16,000 credit, the $2,000 increment in price for the 90-day period, plus the 8 per cent per annum, would equal 58 per cent per annum, a usurious rate. This agreement from the time it was made must be deemed unconscionable as a matter of law, and it constitutes an abuse of discretion for the trial court to enforce this unconscionable transaction. As a matter of equity and justice, plaintiff should be awarded the sum of $2,877.53, the interest received by Bastian under this unenforceable agreement. To deny defendant Bastian all interest under the circumstances may not be deemed an unconscionable result.

It is also my view that not only Bastian, but the closing agent, owed Powell a duty of notice, for the reason that both knew the details of Bastian's agreement with Powell—the two documents showing different arrangements of closing figures sustain such a statement. Even with this information at hand the closing agent allowed Bastian to come away from the closing with over $500 more than his agreement called for—this sum is in addition to the adjustments made by the trial court. It is my opinion the law has been misapplied to the facts.

TUCKETT, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.