480 P.2d 24

Charlie WESTON, Appellant,

v.

W. C. DENNY and Etta Middleton Denny,
his wife, Appellees.

No. I CA–CIV 1354.

Court of Appeals of Arizona,
Division 1,
Department A.

Feb. 1, 1971.

Rehearing Denied Feb. 18, 1971.

Review Denied March 16, 1971.

Pain & Julian, by Fred J. Pain, Jr.,
Phoenix, for appellant.

Favour and Quail, by Keith Quail and
William E. Craig, Prescott, for appellees.

CASE, Judge.

Plaintiff Weston brought an action seeking to have an agreement of sale and warranty deed to some 147 acres of land located near Prescott, Arizona, declared to be a loan and a mortgage and also seeking to have the entire transaction adjudged usurious. The defendant denied these allegations and counterclaimed, seeking to quiet title to the land. The matter was tried to the court, sitting without a jury. The court found that the transaction was a sale and not a security transaction and entered Judgment quieting title in defendant. This appeal was taken from that judgment and the order denying a motion for a new trial. The parties will be designated as they were in the trial court.

The questions to be decided are:

1. Did the trial court abuse it's discretion in denying plaintiff's motion for a

continuance so as to permit him to obtain counsel to represent him at trial?

2. Was the transaction in question a sale with an option to repurchase, or a security agreement?

The facts giving rise to this litigation are as follows:

Plaintiff acquired a one-half interest in the subject land in 1925. Thereafter, Ruth Weston, the sister-in-law of plaintiff purchased the remaining one-half. In 1963 Ruth Weston gave an option to a Norman Fain for $20,000.00 to purchase her one-half interest. Norman Fain exercised his option and acquired title. In November of 1964 plaintiff brought an action for partition of the property. In February of 1965 this action was dismissed by stipulation after plaintiff contracted to purchase the other one-half interest for the sum of $50,000.00.

During the course of the partition litigation and the subsequent negotiations between plaintiff and the Fains, plaintiff and defendant Denny had several discussions in connection with this property. As a result of these discussions an agreement of sale and warranty deed here in question dated June 22, 1965, were executed, conveying a full interest in the property from plaintiff to defendant. Both of these instruments were drawn by plaintiff's then attorney. The contract of sale provided for a total purchase price of $90,000.00, to be payable $75,000.00 in cash and a bill of sale to a D-8 Caterpillar valued at $15,000.00.

The agreement provided that plaintiff had an option to repurchase this property within one year for the sum of $100,000. During the term of the agreement plaintiff was to have the right of possession of the property, together with the right to survey the same, lay out subdivisions, obtain approval thereof, lay out roads, alleys, streets and utilities easements, with the proviso that plaintiff bear the cost of any such work undertaken by him. Plaintiff was further granted the right to sell any por-

tion of the property, with a minor exception, and defendant agreed to convey title to any said land sold by plaintiff so long as defendant received the sum of $870.00 per acre, the costs of such sale to be borne by plaintiff.

The agreement also provided that if defendant had received a sum of $50,000.00 or more at the end of one year from the date thereof, plaintiff would be entitled to an additional one year option to repurchase upon payment to defendant of a sum equal to six percent of the then unpaid purchase price. The agreement further provided that if plaintiff should pay the entire option price prior to the end of the first year, he would be entitled to a reduction in the purchase price equal to the number of months remaining in the said one year period times $833.

Plaintiff requested of defendant an extension of time within which to exercise his option to repurchase but defendant refused to extend the time. Thereafter Weston commenced this action.

The case was set for trial on April 24, 1969. On April 22nd, plaintiff's then counsel filed a motion to withdraw upon the grounds that he had been discharged by plaintiff, which motion bore the consent of plaintiff. The motion was heard on April 22nd and the court entered its order allowing plaintiff's counsel to withdraw, stating that the matter would proceed to trial on April 24th whether or not plaintiff was represented by counsel. On the morning of the trial two attorneys made an appearance on behalf of plaintiff and requested that the court continue the trial stating that they were not in a position to represent plaintiff due to a previous commitment to be out of the state that day, and stating to the court that they needed time to prepare for trial. The court denied the motion and the case was tried with plaintiff representing himself.

Did the trial court abuse its discretion in denying plaintiff's motion for a continuance?

This Court in the case of Dykeman v. Ashton, 8 Ariz.App. 327, 446 P.2d 26 (1968), held:

"It is well settled in this State that a motion for a continuance is directed to the sound discretion of the trial court, and unless that discretion has been abused the trial court's ruling will not be disturbed by a reviewing tribunal. Merryman v. Sears, 50 Ariz. 412, 72 P.2d 943 (1937); City of Tucson v. O'Rielly Motor Company, 64 Ariz. 240, 168 P.2d 245 (1946)." 8 Ariz.App. at p. 330, 446 P.2d at p. 29.

Rule 42(c) Arizona Rules of Civil Procedure, 16 A.R.S., provides that no postponement of a trial shall be granted except for sufficient cause. Plaintiff discharged his attorney on April 21st and thereafter on April 22nd consented to his attorney's motion to withdraw. Thereafter plaintiff had retained counsel to move for a continuance. Plaintiff created the very situation that he now claims to be prejudicial. Reviewing the record we fail to see that plaintiff was prejudiced by his not having counsel during the course of this trial. In this connection it is interesting to note that the attorneys who appeared to move for a continuance filed two post-trial memoranda for plaintiff. Following these procedures, present counsel were employed. We therefore hold that the trial court did not abuse its discretion in denying plaintiff's motion for a continuance.

Was the transaction in question a sale with an option to repurchase, or a security agreement?

Both parties hereto urge that this case is governed by the principles set forth in the case of Merryweather v. Pendleton, 91 Ariz. 334, 372 P.2d 335 (1962), which case dealt with a similar factual situation.

In that case our Supreme Court stated:

"In determining whether a transaction was for security purposes or was a bona fide sale, the courts consider the following factors:

(1) the prior negotiations of the parties;

(2) the distress of the 'grantor';

(3) the fact that the amount advanced was about the amount that the grantor needed to pay an existing indebtedness;

(4) the amount of the consideration paid in comparison to the actual value of the property in question;

(5) a contemporaneous agreement to repurchase; and

(6) the subsequent acts of the parties, as a means of discerning the interpretation they themselves gave to the transaction.

No one of these factors is conclusive, but a combination of several will go a long way in showing that an absolute conveyance was actually a security arrangement * * *." 91 Ariz. at p. 342, 372 P.2d at p. 340.

Let us examine the facts in this case when applied to the six factors of the Pendleton decision.

1. *Prior negotiations:*

Defendant had never loaned plaintiff any money prior to this transaction. The evidence discloses that although plaintiff wanted a loan in this situation, defendant did not want to lend him any money. Defendant testified that when plaintiff approached him for a loan he told him:

"A * * * I says, by golly, I will help you out on that thing the best I can. But the only way I will go into the deal; I will buy the property from you. You sell it to me. I said, I can dig up about $75,000.00 and you said you would buy that cat for $15,000.00. So I says; I added it up; and I said, that will make about $90,000.00. I will tell you what I will do. I said, you sell me the place out there and I will give you an option for one year to buy it back for $100,000.00. So, that was the agreement we made."

The testimony of defendant was corroborated by the testimony of his daughter,

who was present at his home when plaintiff and his attorney visited him for the purpose of discussing this transaction. She stated:

"A * * * I remember Mr. Jacobsen asking Daddy if this was a loan; if he was taking a mortgage on the property; and Daddy said no, he was not; the only way he would have anything to do with it would be to buy the property outright."

## 2. Distress of grantor:

We fail to see that the evidence discloses that plaintiff was in any type of financial distress. He had no fear of losing the property and was under no threat of foreclosure.

## 3. The amount advanced was about the amount the grantor needed to pay an existing indebtedness:

In this instance the money received by plaintiff was not used to pay an existing debt, but rather to buy a one-half interest in the property and to pay an unforeclosed mortgage of $14,000.00. Some of the money received by plaintiff was used to pay personal obligations that were in no way connected with this transaction.

## 4. The amount of the consideration paid in comparison to the actual value of the property:

The testimony of an expert called by defendant at the time of trial indicated that the value of the property was $88,200.00. In our judgment the evidence herein does not reflect that the amount for which defendant agreed to resell the land was disproportionate to the value as determined by the expert.

## 5. A contemporaneous agreement to repurchase:

The agreement reflected that plaintiff would have an option to repurchase within one year from the date thereof, and likewise contained provisions permitting him to promote and sell portions of the property for an agreed price.

## 6. The subsequent acts of the parties:

Plaintiff was not, by the terms of this agreement, obligated to pay taxes or any insurance upon the property. Plaintiff sold the tractor during the term of this agreement which is indicative of the fact that he considered himself the owner.

The testimony of plaintiff clearly indicates he was well aware of the nature of this transaction from its inception as evidenced by the fact that his own attorney drew the particular agreement with which we are here concerned. The only factor present that lends credence to plaintiff's contention is the option to repurchase and this, standing alone, is not sufficient to place this case within the principles laid down in *Merryweather*. We hold that there was ample evidence to support the trial court's implied finding that no security transaction was intended.

The judgment is affirmed.

STEVENS, P. J., and DONOFRIO, J., concur.