508 P.2d 87

**ANDERSON AVIATION SALES COMPANY, INC., an Arizona corporation, Appellant,**

v.

**Lucy PEREZ, Individually and as next friend of Patricia Perez, David Perez, Jr., and Sandra Perez; Charlie Perez, personal representative of the Estate of Benjamin Perez; William Charles, administrator of the Estate of Ronald Charles; Irene Dovie Sumner, personal representative of the Estate of Millard Sumner; and Nancy Sumner, as personal representative of the Estate of Elmer Sumner, Appellees.**

**No. 1 CA–CIV 1804.**

Court of Appeals of Arizona,
Division 1,
Department A.

March 22, 1973.

Review Denied May 29, 1973.

Lewis & Roca by John P. Frank, Robert C. Kelso, Mary M. Schroeder, Stidham & Galusha, by Charles C. Stidham, Lee Galu-

sha, Phoenix, Scott & Cook, Aurora, Colo., by Michael F. Scott, P. C., Denver, Colo., for appellant.

Charles M. Brewer, Ltd., Herbert Mallamo, Ward & Contreras and George Welch, Jr., Phoenix, for appellees.

OGG, Judge.

This is an appeal by Anderson Aviation Sales Company, Inc. from a jury verdict in a wrongful death case that awarded to the plaintiffs the total sum of $385,000.00 damages. The damages were apportioned among the survivors and personal representatives of the five decedents who were killed along with the defendant pilot in an airplane crash at Blythe, California on September 3, 1969. The jury verdict was rendered against the Estate of Forrest Dockery, the deceased pilot, and Anderson Aviation Sales Company, Inc. A third defendant, Madison Chevrolet, paid plaintiffs the sum of $35,000.00 during the trial and was dismissed from the case. There is still pending a cross-claim filed by defendant Anderson Aviation Sales Company, Inc. against defendant Madison Chevrolet.

The facts disclose that defendant Dockery was in the business of supplying used cars to defendant Madison Chevrolet. On the date of the fatal crash he had arranged to fly the five decedents to Blythe, California to drive back five used cars to Phoenix, Arizona.

Dockery appeared at Anderson Aviation's office at Sky Harbor Airport, Phoenix, Arizona at or about 6:30 p. m. He told Anderson Aviation's receptionist on duty that he was flying to Blythe and return and signed Anderson's lease agreement for a Piper Comanche. He appeared to be in a hurry and told the receptionist that he would file a flight plan in the air and immediately went to the rented aircraft and started preflight procedures which included checking out the rotating beacon and navigation lights. Leroy Lashbrook, chief pilot and managing agent of Anderson Aviation Sales Company, Inc., observed Dockery for about five or ten minutes performing the aforesaid preflight procedures. Lashbrook was "pre-flighting" another of Anderson's aircraft which he was taking on a charter flight to Los Angeles. Lashbrook later cancelled his flight after obtaining a weather report that disclosed adverse weather at Los Angeles and interim points, including those east of Blythe.

Shortly before takeoff, Dockery's passengers were seen in and about Anderson Aviation's office and on the flight line.

Dockery took off with his passengers from Sky Harbor Airport at 7:01 and 14 seconds p. m. Sunset occurred in Phoenix at 6:51 p. m. At 7:01 p. m. the Federal Aviation Administration flight service station at Blythe, California reported that the Blythe Airport had sustained a power failure and was without runway lights to assist airmen in landing. Dockery first learned that the Blythe Airport was without runway lights when he called in over Quartzsite for landing instructions at Blythe. An automobile was placed at the end of the runway in the hope that the lights from the vehicle would help illuminate the landing strip.

The testimony of all the experts indicate that Dockery, while attempting to land the plane on this pitch-black night, became spatially disoriented (unable to distinguish up from down or left from right) and crashed his plane into the desert, where he and his passengers perished.

Inspection of the wreckage by experts established that at the time of the crash Dockery's engine was developing power, the propeller was rotating, the landing wheels were not down and the landing lights were not on.

The appellant, Anderson Aviation Sales Company, Inc., cites many reasons why the verdict of the jury should be set aside, but both parties agree the principal issue in this case is whether or not there was sufficient evidence of a negligent entrustment to sustain the jury verdict.

Anderson Aviation's liability is directly interwoven with its ability to foresee the

consequences of leasing a plane to Dockery to carry passengers to Blythe, California on the evening of the fatal crash.

Appellees allege that Anderson Aviation was negligent when it leased the plane to Dockery, knowing he was an inexperienced pilot and not in full compliance with Federal Aviation Regulations. Appellees contend that but for the failure and neglect of Anderson Aviation to observe the rules in general use for the rental of aircraft, the flight would have been aborted and the crash avoided.

Federal Aviation Regulation Section 61.47 sets up the experience necessary before a pilot may carry passengers. This provision is generally referred to as pilot currency.

"Section 61.47(a) General. No person may act as pilot in command of an aircraft carrying passengers unless, within the preceding 90 days, he has made at least five take-offs and five landings to a full stop in an aircraft of the same category, class or type.

(b) Night Experience. No person may act as pilot in command of an aircraft carrying passengers during the period beginning 1 hour after sunset and ending 1 hour before sunrise (as published in the American Air Almanac) unless, within the preceding 90 days, he has made at least five takeoffs and five landings to a full stop during that period of the day."

Although there was some conflict in the evidence as to his currency with the Federal Aviation Regulations, the jury—as the finder of fact—had ample evidence to determine that Dockery was not in compliance with the requirements and he clearly had not made a minimum of five takeoffs and landings at night within the preceding 90 days.

Anderson Aviation takes the position that, even if Dockery was not in compliance with the Federal Aviation Regulations, this imposes no liability on Anderson Aviation. Anderson Aviation argues that the general law applicable to bailments of vehicles is applied to aircraft crashes in Arizona by virtue of 2 A.R.S. § 2–208:

"The liability of the owner of one aircraft to * * * aeronauts or passengers * * * for damage caused by collision on land or in the air shall be determined by the law applicable to torts on land."

We are cited Lutfy v. Lockhart, 37 Ariz. 488, 295 P. 975 (1931) for the proposition that one who rents a car to an unlicensed driver is not liable under the doctrine of negligent entrustment since the lack of a license has no relevance to whether or not the bailee is competent to operate the vehicle. The two leading Arizona cases on the negligent entrustment of an automobile hold that the owner of a vehicle can be held for negligence if he furnished an automobile to a person known to him to be inexperienced or incompetent as a driver. Lutfy, supra; Powell v. Langford, 58 Ariz. 281, 119 P.2d 230 (1941). Anderson Aviation would want us to impose the exact standards for aircraft rentals that are imposed for the rental of automobiles. We must be realistic and comment that an airplane and an automobile are different breeds of cat; what might not be negligence in the rental of a car could be gross negligence in the rental of a plane.

There is little room for error in the sky and the consequences of such error are usually magnified over a similar driver's mistake in an automobile. The skills involved and the consequences of a plane or pilot failure demand more care in the rental of a plane than is required in the rental of an automobile.

In the end the "reasonable man" test must govern as to whether or not Anderson Aviation was negligent under the facts of this case. For cases dealing with negligent entrustment of airplanes, see: Ziser v. Colonial Western Airways, Inc., 10 N. J.Misc. 1118, 162 A. 591 (1932); Central Flying Service v. Crigger, 215 Ark. 400, 221 S.W.2d 45 (1949).

We find it was not error for the trial court to instruct on the theory of neg-

ligent entrustment and allow the case to go to the jury. Taking the evidence as we must do in the light most favorable to sustaining the jury verdict, there was ample evidence whereby the jury could find Anderson Aviation negligent for any one of several reasons:

1. Allowing all arrangements to be handled by a receptionist when the chief pilot was available and under company policy should have handled the arrangements for the flight.

2. Insufficient checking of the pilot's currency with Federal Aviation Regulations and no check-out of the pilot for night flying.

3. Allowing pilot to take off without filing a flight report.

4. Failure to notify pilot of weather conditions over Blythe and that the lights were out on the landing strip.

Appellants urge that the cumulative effect of numerous events in the conduct of this trial demands a reversal. We will now discuss and dispose of each alleged error in the conduct of the trial.

## DID THE COURT ABUSE ITS DISCRETION WHEN IT DENIED APPELLANT'S MOTION FOR CONTINUANCE?

On January 4, 1971, the opening day of trial, Mr. Nathan Holt, one of the attorneys representing Anderson Aviation, was disbarred by order of the Arizona Supreme Court. A mistrial was declared and before the trial resumed the next day a motion for continuance was made by Mr. Charles Stidham who replaced Mr. Holt. Inspection of the record discloses that Mr. Holt never appeared in the case before 2:27 p. m. on January 4, 1971—the opening day of trial. He made no appearance and was not signatory to the joint pretrial statement. The joint pretrial statement shows Anderson Aviation represented by Lee Galusha and Hash, Cantor and Tomanek. Anderson Aviation's pleadings were only signed by Lee Galusha.

The only record we have relative to this motion occurred on January 6, 1971 after the jury had been selected.

[THE COURT] "Mr. Stidham, you had a motion heretofore stated to the Court which the Court stated we would reserve making the formal record until this time. You may now state your motion.

MR. STIDHAM: If Your Honor please, the procedures that took place yesterday afternoon were not recorded. Your Honor graciously granted a mistrial due to the unfortunate incidence of what happened to Mr. Holt. We requested until at least Monday for me to be substituted as counsel. I wish simply the record to show we object to the shortness of the continuance that Your Honor did give and that I have not had enough time to prepare to enter into the case. I simply wanted that objection on the record.

THE COURT: There was this tremendous problem with out-of-state witnesses that were scheduled to be in Pakistan, Brazil, and made it necessary that we proceed of this date. The Court felt that co-counsel, having been in the case from the beginning, there would be adequate representation of Anderson Aviation. Mr. Scott, how long have you been in on the case?

MR. SCOTT: Your Honor, I drove in Phoenix approximately 10:30 Tuesday evening and had no knowledge of the case prior to that time.

THE COURT: And you are associated as co-counsel?

MR. SCOTT: Yes.

THE COURT: Mr. Galusha has been in the case from the very beginning?

MR. GALUSHA: That's correct.

THE COURT: Any further matters? We'll take the noon recess and recess until 2:00."

Rule 42(c), Rules of Civil Procedure, 16 A.R.S. reads as follows:

"When an action has been set for trial on a specified date by order of the court, no postponement of the trial shall be granted except for sufficient cause, supported by affidavit, or by consent of the parties, or by operation of law."

There was no attempt to comply with this rule; however, the trial court did not base its decision to refuse a continuance on any technical default. It is clear that the trial judge studied the facts and the necessities of this sudden disbarment of one of Anderson Aviation's attorneys and in the exercise of his discretion ordered the trial to proceed. Mr. Holt had never appeared at any pretrial appearance and was never listed as counsel on the pleadings. Anderson Aviation was represented by Mr. Galusha who had been in the case from the beginning and who had participated in all pretrial matters and signed all pleadings. Anderson Aviation was also represented by Michael F. Scott who had recently come to the case.

██ ██ The trial judge was forced into a difficult position with a jury standing by, out-of-state witnesses to be accommodated and the case scheduled to start. We cannot say under the facts of this case that he abused his discretion in denying a motion for continuance. The motion for a continuance is directed to the sound discretion of the trial court and unless this discretion has been abused we will not disturb the ruling. Weston v. Denney, 14 Ariz.App. 1, 480 P.2d 24 (1971); Evans v. Lundgren, 11 Ariz.App. 441, 465 P.2d 380 (1970); City of Tucson v. O'Rielly Motor Co., 64 Ariz. 240, 168 P.2d 245 (1946).

## THE MENTION OF INSURANCE BY ONE OF PLAINTIFF'S WITNESSES

██ This incident happened as Mr. Galusha, one of Anderson Aviation's attorneys, was in the process of the cross-examination of David Holladay, one of plaintiff's expert witnesses.

Mr. Galusha: "Let me ask you then, sir, under what circumstances would you rent an aircraft to a pilot for a night flight?

Mr. Holladay: The first thing I would be guided by the requirements for the proficiency and currency of the pilot, Federal Aviation Regulations. And the second thing I would be guided by perhaps equally, at least in weight and substance, would be the contents of my insurance policy and what requirements it outlined in terms of qualifications of the pilot."

Anderson Aviation moved for a mistrial which was denied. We feel this was a fair answer to a pertinent question by Mr. Galusha and that under this fact situation there was no abuse of discretion in the denial of the motion for mistrial. E. L. Jones Construction Co. v. Noland, 105 Ariz. 446, 466 P.2d 740 (1970); Muehlebach v. Mercer Mortuary and Chapel, Inc., 93 Ariz. 60, 378 P.2d 741 (1963).

## ADMISSION INTO EVIDENCE OF A CHART, PLAINTIFF'S EXHIBIT 51, AND A PHOTO OF THE BODIES, EXHIBIT 18

██ ██ Anderson Aviation claims these two exhibits had no relevance and only served to inflame and prejudice the jury. An examination of the record shows the chart and the photo to depict the general crash scene. The general crash scene was relevant and the fact that bodies do appear is not sufficient grounds to exclude these exhibits. It should be noted that two inflammatory close-up photos of the bodies were not admitted into evidence and that the chart and photo complained of here were not of an inflammatory nature. The record discloses that both the chart and the photo complained of were admitted into evidence without objection. Even if the admission of such exhibits had been error—which it was not—such error was waived. Brooker v. Canny, 103 Ariz. 529, 446 P.2d 929 (1968).

## MISCONDUCT OF PLAINTIFF'S ATTORNEY IN CLOSING ARGUMENT

█ In the closing argument plaintiff's attorney referred to Anderson Aviation as "the target defendant" and "the prime defendant." These remarks followed a closing argument by Anderson Aviation's attorney to the effect that Anderson Aviation " . . . were very nominal defendants . . ." and " . . . that it would not be God's wish . . ." to have judgment assessed against Anderson Aviation because of its " . . . very casual relationship . . ." to the incident and that Anderson Aviation were the ". . . innocent victims . . ." in this lawsuit. Although this was not entirely a proper issue it appears the defendant's attorney opened the door to such an answer by the plaintiff's attorney in his closing argument and that under the facts of this case there was no error. See Udall on Arizona Law of Evidence, Chapter 2 § 11 at page 20; State v. Farmer, 97 Ariz. 348, 400 P.2d 580 (1965); Tucker v. Reil, 51 Ariz. 357, 77 P.2d 203 (1938).

█ The attorney for plaintiffs next proceeded with his argument, explaining that Anderson Aviation would have been kicked out of court long ago if the case was without merit. At this point in the argument the trial judge, before any objection was raised, very alertly admonished the jury as follows:

> The Court: "One moment, I must interrupt, counsel. I will admonish the jury to disregard the last remarks of counsel as to whether there has been a prior ruling on whether you have or do not have a case to present to the jury. The jury is instructed to disregard the comments of counsel in that regard as though they have never been spoken."

The attorney for Anderson Aviation then moved for a mistrial that was denied.

The pertinent part of Rule 59(a), 16 A. R.S. Rules of Civil Procedure, reads:

> "A verdict, decision or judgment may be vacated and a new trial granted on motion of the aggrieved party for any of the following causes materially affecting his rights:
>
> *   *   *   *   *   *
>
> 2. Misconduct of the jury or prevailing party."

█ It is clear that such a comment by plaintiff's attorney was improper and we must now decide if it was of sufficient magnitude in materially affecting the jury verdict as to warrant a reversal in this case. Appellants Anderson Aviation rely heavily on the case of Sanchez v. Stremel, 95 Ariz. 392, 391 P.2d 557 (1964). In that case the same trial judge that tried this case granted a motion for new trial and such decision was upheld by our Supreme Court. The Supreme Court, in commenting on the flagrant misconduct of counsel in that case, stated: "Throughout the trial plaintiff's counsel made improper attempts to blacken the characters of defendant and his passenger, and about half of the trial was taken up by his attempts to go into irrelevant matters." 95 Ariz. at page 394, 391 P.2d at 559. In reading the instant case and the Stremel case, it appears that the improper conduct in Stremel was much more flagrant. It must appear that the improper conduct of counsel actually influenced the verdict. The trial judge is in the best position to determine this and his decision will not be overturned unless there is an abuse of discretion. Sanchez v. Stremel, supra; Zugsmith v. Mullins, 86 Ariz. 236, 344 P.2d 739 (1959). At the close of the case the court gave the stock instruction that arguments and comments of counsel are not to be considered as evidence in the case. The granting of a new trial because of the misconduct of counsel in closing argument is only sparingly granted. It should never be granted for a disciplinary measure, but only to prevent a miscarriage of justice. Zugsmith v. Mullins, supra; Mahoney v. Frost, 101 Ariz. 344, 419 P.2d 523 (1966); Beliak v. Plants, 93 Ariz. 266, 379 P.2d 976 (1963); Nelson

v. Twin City Motor Bus Co., 239 Minn. 276, 58 N.W.2d 561 (1953). From a review of the facts and the law we cannot say the trial judge abused his discretion when he refused to declare a mistrial in this case.

## SHOULD THE JURY HAVE BEEN INFORMED OF THE MANNER IN WHICH MADISON CHEVROLET DISAPPEARED FROM THE CASE?

While the trial was in progress, Madison Chevrolet and the plaintiffs reached a settlement. Plaintiff's counsel announced to the jury that he had dismissed the case against Madison Chevrolet. Thereafter the trial court, over objection by Anderson Aviation, allowed the plaintiffs to dismiss as to Madison Chevrolet but reserved for another trial the cross-claim of Anderson Aviation against Madison Chevrolet.

▆▆ The release of one joint tort-feasor does not automatically release other joint tort-feasors unless it was the intent of the parties or plaintiffs received full compensation. See Adams v. Dion, 19 Ariz.App. 69, 504 P.2d 1292 (1973) for the most recent discussion of this problem.

▆▆ 16 A.R.S. Rule 42(b), Rules of Civil Procedure, reads as follows:

"The court, in furtherance of convenience or to avoid prejudice . . . may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue . . . of any number · of claims, cross-claims, . . . or issues . . ."

The trial court has wide discretion in determining whether issues should be tried together or severed for trial. Ulan v. Richtars, 8 Ariz.App. 351, 446 P.2d 255 (1968).

In reserving the cross-claim for a later trial the judge stated that he could see no added expense to Anderson Aviation and that there was no prejudice since the issues involved in the cross-claim had never been tried in this case.

▆▆ Under the facts of this case it was not an abuse of discretion for the trial judge to order a separate trial on the cross-claim.

## DID THE TRIAL COURT COMMIT ERROR IN INSTRUCTING THE JURY

▆▆ Anderson Aviation complains that there was no evidence to support an instruction on the theory of negligent entrustment. We have already discussed this question and found there was evidence in the case that warranted presenting this issue to the jury. Anderson Aviation contends that it was error for the court to instruct that a violation of the Federal Aviation Regulations constituted negligence, per se.

▆▆ A violation of a safety statute or ordinance enacted for public safety constitutes negligence per se. Arizona Public Service Company v. Brittain, 107 Ariz. 278, 486 P.2d 176 (1971); Rogers v. Mountain States Telephone and Telegraph Company, 100 Ariz. 154, 412 P.2d 272 (1966).

Violations of specific Federal Aviation Regulations have been held to be negligence per se. Gatenby v. Altoona Aviation Corporation, 407 F.2d 443 (3 Cir. 1968); Town of East Haven v. Eastern Airlines, Inc., 282 F.Supp. 507 (D.C.1968); Eastern Airlines, Inc. v. Union Trust Company, 95 U.S.App.D.C. 189, 221 F.2d 62 (1955).

▆▆ Anderson Aviation also alleges that this instruction was misleading and should have been limited to the pilot Dockery. Although this was not a model instruction, we do not feel the jury was misled. Instructions must be read as a whole and in the light of each other. Patania v. Silverstone, 3 Ariz.App. 424, 415 P.2d 139 (1966); Newton v. Main, 96 Ariz. 319, 395 P.2d 360 (1964).

The judgment of the trial court is affirmed.

DONOFRIO, P. J., and STEVENS, J., concur.