743 P.2d 400

Viola Darlene CATCHINGS, individually and as personal representative of the Estate of Thomas Catchings, deceased; Dawn Marie Catchings, By and Through her next of friend, Viola Darlene Catchings; Karen Andrews DePace, individually and as personal representative of the Estates of Billie Eugene Andrews and Jolene Andrews, deceased; John Leslie Andrews; and David Wayne Andrews, By and Through his guardian Karen Andrews DePace, Plaintiffs/Appellants,

v.

The CITY OF GLENDALE, a municipal corporation; Defendant/Appellee.

No. 2 CA–CV 87–0012.

Court of Appeals of Arizona, Division 2, Department A.

May 5, 1987.

Reconsideration Denied June 15, 1987.

Review Denied Sept. 22, 1987.

Charles M. Brewer, Ltd. by Charles M. Brewer and Stuart J. Reilly, Phoenix, for plaintiffs/appellants.

Black, Robertshaw, Copple & Pozgay, P.C. by Steven D. Copple, and Law Offices of Richard M. Davis by Richard M. Davis, Phoenix, for defendant/appellee.

## OPINION

FERNANDEZ, Judge.

Appellants, the survivors of Thomas Catchings and Billie and Jolene Andrews, appeal from the judgment entered in favor of appellee City of Glendale after a lengthy trial and an unfavorable jury verdict. We affirm.

On June 13, 1977, the Andrews flew in a Cessna 172 piloted by Susan McCoy, a co-worker of Billie Andrews, from the Glendale Municipal Airport to Prescott. The airport is owned by appellee. On their return flight in mid-afternoon, the airplane was heard to touch down at about the midpoint of the runway, and the pilot was then seen attempting to go around. There was testimony that the plane never rose higher than four or five feet off the ground on the take off. The plane flew past the end of the runway and crashed into a cement mixer truck that was then traveling east on Olive Avenue. The driver of the cement mixer was thrown out and killed. The cement mixer, with the airplane impaled on it, then traveled approximately 700 feet further east on Olive before it turned over. All three people in the plane were killed.

The airport originally consisted of an unpaved airstrip owned and operated by private companies engaged primarily in non-aviation activities. In 1971 the City of Glendale obtained title to the site at a bankruptcy sale, paved the runways and opened the airport for public use. The airport is actually located within the Peoria city limits.

Appellants filed suit in December 1977 against the city, McCoy's estate and the company that rented the airplane to her. The rental company was dismissed from the case in 1982, and the estate was dismissed in 1983. Trial against the City of Glendale commenced May 29, 1984, and the jury verdict in favor of the city was rendered July 23, 1984. Appellants contended at trial that the crash occurred because the runway was not long enough and because there were obstructions close to the airport in the form of two roads, a railroad and a large tree.

The airport is a basic utility-stage I airport, the lowest class of airport. That type of airport can accommodate approximately 75% of propeller-driven airplanes under 12,500 pounds. The master airport plan prepared for appellee in 1980–1981, which stated that the runway length at the airport was deficient by over 1,000 feet, contem-

plated a new airport which would accommodate small business jets as well as most propeller-driven airplanes. It is undisputed that the runway at the time of the accident (2,371 feet in length) was short, and the jury heard testimony on that fact. It also heard testimony that a Cessna 172, the type of plane that crashed, is a four-seat propeller airplane which requires 1,026 feet for a take off from a standing start under conditions that existed on the day of the crash. The airplane that crashed was taking off after an aborted landing. There was testimony as well that a Cessna 172 could touch down and come to a stop in less than 600 feet.

On appeal, appellants complain that 1) the jury was improperly empaneled because a juror gave incorrect answers to questions and failed to provide requested information, 2) the trial court improperly instructed the jury and erroneously refused appellants' requested jury instructions, and 3) the trial court improperly precluded admission of evidence.

### JURY EMPANELMENT

Appellants contend that they are entitled to a new trial because the jury was not properly empaneled. Their contention is based upon allegedly false answers given on voir dire by a juror. Appellants assert that the false answers deprived them of the right to challenge the juror for cause or, at the least, to remove him through a peremptory challenge.

During jury voir dire, prospective juror Egbert responded to questions that he was not married and had no children. Appellants later discovered that Egbert was married at the time of trial, that he had been previously married and divorced twice, and that he had four children. In addition, Egbert did not respond to a question about whether panel members had been involved in a lawsuit. Later investigation revealed that, in addition to his two divorce actions, Egbert had sued someone for assault and battery and had been sued to clear title in a mortgage foreclosure action. Appellants insist that they would have exercised a peremptory strike to excuse Egbert if they had known the true facts.

In *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), the United States Supreme Court held that in order for a party to obtain a new trial because of a juror's failure to respond honestly to a material question on voir dire, the party must show that a correct response would have resulted in a valid challenge for cause. Even if Egbert had answered honestly about his marriages, his children, and his previous involvement in litigation, his responses would not have constituted grounds for a challenge for cause.

Appellants insist that the *McDonough* holding is not applicable here because the Supreme Court found that the juror's answers in that case were honest but mistaken, whereas Egbert's answers were clearly false. That is apparently the case with regard to his answers about marriages and children, since appellants produced copies of official records of his marriages and of one of his divorces as well as his children's birth certificates in their motion for new trial. With regard to his previous involvement in litigation, however, the record indicates the question was asked ambiguously. Appellants' attorney questioned the panel as follows: "Have any of you folks been involved in any type of accident like an automobile accident or construction accident, or were you involved in a lawsuit and caused to be sued or one of your relatives caused to be sued?" All the panel members who responded to that question mentioned lawsuits connected with accidental injuries. Egbert was not involved in litigation arising from an accident. Given the nature of the question, we are unable to say that Egbert was dishonest in failing to respond affirmatively to it.

■ In any event, however, the rule in Arizona with regard to jury misconduct is that a party must show he was prejudiced by the misconduct in order to obtain a new trial. *Webb v. Hardin,* 53 Ariz. 310, 89 P.2d 30 (1939). "The test is whether prejudice seems affirmatively probable and prejudice will not be presumed, but must ap-

pear probable from the record." *Hallmark v. Allied Products Corp.*, 132 Ariz. 434, 441, 646 P.2d 319, 326 (App.1982). Since the ten jurors [1] rendered a unanimous verdict, appellants have not shown that probable prejudice resulted from Egbert's conduct. A verdict of eight jurors would have been sufficient. There is no showing that Egbert's misconduct influenced the other jurors. Since we cannot assume prejudice and since appellants have failed to show us any, we find no basis for their contention that they are entitled to a new trial. *Simpson v. Heiderich*, 4 Ariz.App. 232, 419 P.2d 362 (1966).

## JURY INSTRUCTIONS

█ Appellants contend the trial court erred because it refused to instruct the jury on any of the theories of their case. They insist it was error to instruct the jury with only a single general negligence instruction, citing *Stallcup v. Coscarart*, 79 Ariz. 42, 282 P.2d 791 (1955). The general rule is that a party is entitled to have a requested instruction given if it is supported by the evidence presented. *DeMontiney v. Desert Manor Convalescent Center Inc.*, 144 Ariz. 6, 695 P.2d 255 (1985); *Porterie v. Peters*, 111 Ariz. 452, 532 P.2d 514 (1975). Appellants contend the court erroneously refused to instruct the jury on negligence per se, on negligence related to the facts of their case, on appellee's failure to provide a safe airport, and on foreseeability and proximate cause.

### Negligence Per Se

A major issue at trial was the applicability of Part 77 of the Federal Aviation Regulations (F.A.R.s) entitled "Objects Affecting Navigable Airspace," which was adopted by the Federal Aviation Administration pursuant to the authority of 49 U.S.C. § 1348. Section 77.21 of the F.A.R.s, 14 C.F.R. § 77.21 (1975), states that Part 77 "establishes standards for determining obstructions to air navigation. It applies to existing and proposed manmade objects, objects of natural growth, and ter-

rain. The standards apply to the use of navigable airspace by aircraft and to existing air navigation facilities, such as an air navigation aid, [or] airport...." The standards established for an airport such as the Glendale Municipal Airport provide that an existing object is an obstruction to air navigation if it exists within an imaginary "primary surface" that extends 200 feet beyond the end of the runway and an imaginary "conical surface" that extends outward and upward from the end of the runway at a slope of 20 to 1. 14 C.F.R. §§ 77.23, 77.25(b)(c).

It is undisputed that at the time of the accident, obstructions existed within those imaginary surfaces at the Glendale Municipal Airport. Both Olive and Grand Avenues are within the defined primary surface as is a railroad track that runs parallel to Grand Avenue. In addition, at the time of the accident, a 16-foot high chinaberry tree was within the primary surface north of Olive and west of the runway. The tree was located on property not owned by appellee.

█ Appellants contend that appellee violated Part 77 of the F.A.R.s by failing to comply with the standards regarding obstructions in the primary surface. They also contend that the violations warranted the giving of a negligence per se instruction to the jury, based upon *Anderson Aviation Sales Co. v. Perez*, 19 Ariz.App. 422, 508 P.2d 87 (1973). In that case, a negligence per se instruction was given because the evidence showed a fact issue existed on the question of whether § 61.47 of the F.A.R.s had been violated. That section provided at the time that "[n]o person may act as pilot in command ... unless [certain requirements were met]." 19 Ariz.App. at 426, 508 P.2d at 91. No such prohibitive language appears in the applicable provisions of Part 77 which distinguishes this case from *Anderson Aviation*. The other cases cited by appellants also involved sections of the F.A.R.s which specifically prohibit particular conduct and which utilize language similar to that of the section in-

---

1. The parties stipulated that because the trial was so lengthy, all jurors who remained at the end of trial would participate in the deliberations.

volved in *Anderson Aviation.* Part 77 does not specifically prohibit any conduct. It contains no mandatory language. Instead, it establishes standards whereby an airport owner can determine whether or not an object constitutes an obstruction to navigable airspace. Nothing in Part 77 either prohibits the presence of any obstruction or requires its removal. There is no provision for fining an airport or for shutting it down in the event there are obstructions to the airspace in the primary surfaces of runways.

"[N]egligence per se applies when there has been a violation of a *specific* requirement of a law or an ordinance." *Griffith v. Valley of Sun Recovery & Adjustment Bureau, Inc.,* 126 Ariz. 227, 229, 613 P.2d 1283, 1285 (App.1980) (emphasis in original). In ruling on a motion in limine, the trial court determined that Part 77 did not require the airport to modify the runway in order to comply with the obstruction standards. Because we agree with that ruling, we find the court correctly refused appellants' negligence per se instruction on Part 77.

■ Appellants also requested a negligence per se instruction with regard to A.R.S. § 2–321, which includes among its definitions for use in airport zoning regulations the following definition of airport hazard: "[A]ny structure, tree or use of land which obstructs the air space required for flight of aircraft in taking off or landing at an airport, or is otherwise hazardous to aircraft taking off or landing." A.R.S. § 2–322 declares as follows:

1. That creation or establishment of an airport hazard is a public nuisance and a public injury to the community served by an airport.

2. That it is necessary in the interest of the public health, public safety, and general welfare that the creation or establishment of airport hazards be prevented.

3. That prevention of these hazards should be accomplished to the extent legally possible by exercise of the police power without compensation.

Appellants contended at trial that the presence of the chinaberry tree constituted an airport hazard under § 2–321 and consequently was a violation of § 2–322 so as to warrant a negligence per se instruction. They contended that the tree obstructed the pilot's vision so that she was unable to see the cement mixer on the road and to take appropriate action. Appellants, however, have overlooked A.R.S. § 2–326(C) which provides that no airport zoning regulations shall require the removal of any tree which does not conform to the regulations at the time they are adopted. Because of that section, the failure to remove the tree could not constitute negligence per se, and the court correctly refused the requested instruction.

*Negligence Instructions Related to the Facts*

Appellants complain that their requested jury instruction to the effect that an FAA Advisory Circular could be used by the jury in determining whether or not appellee had been negligent in not removing obstructions at the airport was improperly refused by the trial court. They also contend their requested instructions on foreseeability and the duty to provide a safe airport should have been given.

■ Jury instructions are viewed as a whole, with an eye toward determining whether or not the jury has been given the proper rules to apply in arriving at its decision. *Arizona Public Service Co. v. Brittain,* 107 Ariz. 278, 486 P.2d 176 (1971). A jury verdict will not be overturned because of the jury instructions that were given unless there is substantial doubt as to whether or not the jury was properly guided in its deliberations. *Petefish By and Through Clancy v. Dawe,* 137 Ariz. 570, 672 P.2d 914 (1983).

■ With regard to appellants' requested foreseeability instruction, we find that the requested language more likely than not would have confused the jury. See *Arizona Public Service Co. v. Brittain,* supra. The testimony of appellants' own experts regarding the FAA Advisory Circular mentioned in another requested instruc-

tion was that it contained recommendations only. The authority cited by appellants in its requested instruction, *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975), did not concern the issue of jury instructions but rather the admissibility of evidence and was thus inapplicable here.

■ Appellants also complain because the trial court refused their requested instruction which stated that appellee owed them a duty to provide a *safe* airport and that if the jury determined it had breached that duty, it must find for appellants. There was contradictory testimony as to whether or not the airport was safe. Further, an airport proprietor does not owe a duty to provide a *safe* airport. He only owes a duty to the public to maintain *reasonably safe* conditions for aircraft using the airport, and that duty extends to runways. *Traudt v. City of Chicago*, 98 Ill. App.2d 417, 240 N.E.2d 188 (1968); *Plewes v. City of Lancaster*, 171 Pa.Super. 312, 90 A.2d 279 (1952); *Mills v. Orcas Power & Light Co.*, 56 Wash.2d 807, 355 P.2d 781 (1960). Appellants' requested instruction was an incorrect statement of the law which was misleading since it could be interpreted as imposing absolute liability upon appellee. An instruction which does not correctly state the law may properly be refused. *Miller v. Arnal Corp.*, 129 Ariz. 484, 632 P.2d 987 (App.1981); *Scott v. Allstate Insurance Co.*, 27 Ariz.App. 236, 553 P.2d 1221 (1976). The trial court is not required to rewrite a proffered instruction so that it accurately reflects the law. *Porterie v. Peters*, supra. The requested instruction was properly refused. We find that the instructions given adequately covered the airport proprietor's duties.

After viewing the entire jury instructions that were given, we find that the giving of the Recommended Arizona Jury Instructions on negligence was sufficient to properly apprise the jury of the issues they were to decide in this case.

### REFUSAL TO ADMIT EVIDENCE

Appellants' final complaint is that the trial court erred in granting appellee's mo-tion in limine to preclude any reference to displaced threshold markings that were placed on the airport runway subsequent to the accident. The markings were placed on the runway in 1981. The purpose of displaced threshold markings is to indicate to a pilot the "nearest point to the approach end at which an aircraft using this runway may touch down on that runway when making a landing when visual flight rules (VFR) apply." *In re Aircrash Disaster at Boston, Massachusetts, July 31, 1973*, 412 F.Supp. 959, 963 n. 4 (D.Mass.1976), aff'd, 561 F.2d 381 (1st Cir.1977), cert. denied, 434 U.S. 1064, 98 S.Ct. 1238, 55 L.Ed.2d 764 (1978). Thresholds are displaced from the paved approach end of the runway in order to permit an aircraft to clear obstacles in the flight path with sufficient altitude before touching down on the runway. The trial court prohibited appellants from introducing evidence that the thresholds were displaced in 1981 but permitted their experts to testify that the airport's failure to have displaced thresholds was a contributing cause of the accident.

Appellants contend that the evidence of subsequent displacement should have been admitted because displaced thresholds were necessary to satisfy Part 77 of the F.A.R.s. Since we have already held that the F.A.R.s do not specifically prohibit or require any particular conduct, that argument is without merit.

■ The court also refused to allow evidence of the subsequently-displaced thresholds because their placement was an event that occurred subsequent to the accident and was thus inadmissible under Rule 407, Rules of Evidence, 17A A.R.S. (1986 Supp.). Appellants argue that the court erroneously excluded a letter from the chief of the Safety/Standards Section of the Federal Aviation Administration written in May 1980 which notified the Glendale Airport manager that the proximity of Olive Avenue and a railroad trestle to the runways presented a safety issue and which noted that the approach surface clearances in Part 77 of the F.A.R.s could be achieved by displacement of the thresholds. Appellants contend that the letter impeached the testi-

mony of a defense expert and supported their contention that the airport was required to meet the obstruction standards of Part 77 of the F.A.R.s. The trial court ruled that the letter did not constitute impeachment and affirmed his prior rulings that the F.A.R.s are not mandatory and that evidence that displaced threshold markings were placed on the runway subsequent to the accident was inadmissible. The court reiterated its ruling that appellants' experts were permitted to testify that appellee should have had displaced thresholds in 1977. At least one expert so testified.

The trial court's ruling on the admission or preclusion of evidence will be affirmed, absent a clear abuse of discretion and a showing of prejudice. *Rimondi v. Briggs,* 124 Ariz. 561, 606 P.2d 412 (1980); *Hallmark v. Allied Products Corp.,* supra. Appellants have failed to show either an abuse of discretion or resulting prejudice in the trial court's rulings on preclusion of the displaced threshold testimony and the 1980 letter from the Federal Aviation Administration.

Appellants also contend the letter was admissible under a "directive from a superior authority" exception to Rule 407, citing *Rozier v. Ford Motor Co.,* 573 F.2d 1332 (5th Cir.1978). The difficulty with that argument, however, is that the language of the Fifth Circuit with regard to the requirement of a remedial measure by a superior authority is dicta since the letter in question there was written prior to the accident and thus did not come under Rule 407. In addition, since Part 77 is not mandatory, it cannot be said that the letter from the FAA reflects a requirement from a superior authority.

█ Finally, appellants complain because the trial court precluded them from introducing the opinion of an engineering test pilot as to the safety of the airport on the ground that the opinion was improper rebuttal and should have been part of their case-in-chief. A trial court's ruling on the admission of rebuttal testimony will not be disturbed on appeal without a showing of abuse of discretion. *Ferguson v. Cessna*

*Aircraft Co.,* 132 Ariz. 47, 643 P.2d 1017 (App.1981), appeal dismissed, 132 Ariz. 38, 643 P.2d 1008 (1982). The trial court stated that the proffered opinion was merely a repetition of appellants' case and refused to permit it in rebuttal. We find no abuse of discretion in the court's ruling, which was based on the observance of many weeks of testimony in the case.

Having found no merit to any of appellants' contentions, we affirm the judgment for appellee.

HATHAWAY, C.J., and HOWARD, P.J., concur.